## 2007 OK 90

**Drs. Greg and Deborah SAUL, husband and wife, Petitioners,**

v.

**The Honorable Stephen P. ALCORN, Respondent.**

**No. 104,944.**

Supreme Court of Oklahoma.

Nov. 13, 2007.

W. Devin Resides, Laure M. Resides, Oklahoma City, OK, for Petitioners.

Rick Ault, Assistant Public Defender, Kathryn Brewer, Assistant District Attorney, Joseph W. Strealy, Gene Callaway, Assistant General Counsel, Department of Human Services, Oklahoma County, Oklahoma City, OK, for Respondent.

KAUGER, J.

¶1 The issue presented is whether respite/certified foster parents should have been allowed to participate in a proceeding to remove a child from their home. We hold that 10 O.S. Supp.2002 § 7208[1] does not divest

---

1. Title 10 O.S. Supp.2002 § 7208 provides:

A. In making placements in foster care, the Department of Human Services, the Department of Juvenile Justice and any child-placing agency shall, if possible, arrange for a preplacement visit for any child five (5) years of age or older with the persons who will be providing foster care. Persons involved in the preplacement visits should make every effort to discuss with the child how the care, supervision, and guidance, including, but not limited to, parental substitute authority, shall be achieved.

B. If a child placed in the custody of a child-placing agency or in the custody of a state agency by the court has resided with a foster parent for three (3) or more months:

1. Except in an emergency, the state agency or child-placing agency shall:

a. give a minimum of five (5) judicial days' advance notice to the foster care family and to the court before removing a child from such family's care, and

b. at the time of such notification, provide the foster family with a written statement of the reasons for removing a child; and

2. The foster parent shall be entitled to submit to the court written reports or present testimony concerning the strengths, needs, behavior, important experiences, and relationships of the child, in addition to such other information the court may request.

C. When a child, under the jurisdiction of a court pursuant to the Oklahoma Children's Code, is placed in the custody of the Department of Human Services, or a child, under the jurisdiction of a court pursuant to the Juvenile Justice Code is placed in the custody of the Department of Juvenile Justice, or is placed in the custody of any child-placing agency, the state agency or child-placing agency shall have discretion to determine an appropriate foster placement for the child. Except as provided in this section, the state agency or child-placing agency may remove a child in its custody from a foster placement whenever the state agency or child-placing agency determines that removal is in the best interests of the deprived child, or the delinquent child or the child in need of supervision, consistent with the state's interest in the protection of the public.

D. 1. In order to promote stability for foster children and limit repeated movement of such children from one foster placement to another, the state agency or child-placing agency, except as otherwise provided by this subsection, shall not change the foster home placement of a child without the approval of the court in the following circumstances:

a. the child has been moved once since the last court hearing, as provided in Section 7003–5.4a of this title, or

b. a foster parent with whom the child has resided for more than six (6) months objects, in writing pursuant to the provisions of this subsection, after notice of the removal of the child by the state agency or the child-placing agency.

2. The objection shall be filed with the court by the foster parent and served on the state agency or child-placing agency within five (5) judicial days after receipt of the notice from the state agency or child-placing agency regarding removal of the child. The court shall provide for notice to other parties in the case.

3. Timely filing and service of the objection shall stay removal of the child pending review of the court unless the state agency's or child-placing agency's stated reason for removal is:

a. an emergency situation. As used in this subparagraph, "emergency situation" means a removal that is:

(1) for emergency medical or mental health treatment,

(2) due to substantial noncompliance by the foster parent with applicable contract requirements and agreements such that the health, safety or welfare of the child is endangered, or

(3) due to a pending investigation of allegations of abuse or neglect of a child by a foster parent or other person residing in the foster family home, or

b. reunification with a parent that contributed to the child being deprived, with the prior approval of the court.

4. The court shall conduct an informal hearing within fifteen (15) working days on any objection filed pursuant to this section. The

the trial court of its duty to determine the child's best interests in a removal proceeding. Under the facts presented, a proper determination of the child's best interest requires that all the foster parents be allowed to fully participate in the removal proceeding. Therefore, we assume original jurisdiction and grant the writ of prohibition and writ of mandamus requiring the trial court to hold another hearing regarding the child's removal.

### FACTS

¶ 2 This controversy centers around two foster families, Doctors Greg and Deborah Saul (the Sauls) and their neighbors, the Hagermans, who live across the street from the Sauls. On November 6, 2006, Angela Elizabeth Miller gave birth to a baby girl, B.D.M. Upon her birth, the Department of Human Services (DHS) removed B.D.M. from her mother and took her into emergency custody. On December 11, 2006, B.D.M. was adjudicated deprived and the mother relinquished her parental rights to two of her other children. B.D.M. was initially placed with the Hagermans who were already caring for B.D.M.'s older half-sister, R.M.

¶ 3 According to the Sauls, as early as December of 2006, when the child was approximately 4 weeks old, they began providing respite care for B.D.M. on a intermittent basis. DHS insists that B.D.M. remained in the Hagermans' care for about four months after her birth, or until sometime near the end of February, 2007. Nevertheless, by March 9, 2007, the Sauls became certified foster parents with B.D.M. in their care.

¶ 4 On June 7, 2007, the trial court held a review hearing and DHS recommended that B.D.M. remain with the Sauls. The trial court approved the recommendation and it decided that the Sauls could take the child overseas for a family vacation. On June 11, 2007, the trial court approved an order authorizing the Sauls to obtain a passport for the child. Abruptly, the next day, June 12, 2007, DHS sent a written notice to the Sauls notifying them that B.D.M. would be removed from their home on June 19, 2007, and placed with the Hagermans.

¶ 5 On June 15, 2007, upon request of the child's attorney and in agreement with the assistant district attorney, the trial court stayed the removal of B.D.M. until a hearing on the matter could be held. The parties participated in foster parent mediation, but nothing was resolved. On July 30, 2007, the trial court held another hearing. The hearing revealed that:

1) B.D.M. had spent approximately four months of her life with the Sauls and four months with the Hagerman; 2) moving the child was allegedly part of the Department's long-term and permanency placement plan to reunite the half-siblings, even though two other siblings were not with the Hagermans; 4) both families wish to adopt B.D.M.; 5) the Sauls had provided intermittent respite care for the Hagermans because of some family tragedies; 6) the Sauls were willing to sign a contract agreeing to keep the half-siblings in close contact with each other; 7) caseworkers at DHS changed and the removal coincided with the change in caseworkers; 8) the Sauls initially provided respite care, but were under the belief that they had become the assigned foster parents.

The trial court did not hear testimony or take evidence from either set of foster parents, and no evidence was heard regarding the effects the move might have on the child. Neither the original caseworker nor the new

court may order that the child remain in or be returned to the objecting foster parent's home if the court finds that the Department of Human Services or child-placing agency's decision to remove the child was arbitrary or was inconsistent with the child's treatment and service plan.

5. At the hearing, the Department of Human Services shall inform the court as to the reason why the foster child is being removed from the foster home. The Department of Human Services shall also inform the court as to the number of times a foster child has been moved within the foster family system.

6. The court, in the court record, shall explain the reasons why the removal of a foster child from the foster home is in the best interests of the foster child.

E. The Department of Human Services shall not remove a foster child from a foster home solely on the grounds that a foster parent has exercised substitute parental authority.

caseworker attended the hearing to explain the removal.

¶ 6 The trial court lifted the temporary stay on B.D.M.'s removal and approved the DHS request to place B.D.M. with the Hagermans. It found that: 1) DHS did not act arbitrarily or capriciously in its decision to remove B.D.M.; 2) the Sauls lacked standing to object to the removal because they had not had custody of the child for at least six months as required by 10 O.S. Supp.2002 § 7208;[2] and 3) it was in B.D.M.'s best interest to be placed with the Hagermans.

¶ 7 On August 16, 2007, the Sauls filed an application to assume original jurisdiction and petition for emergency relief, and writs of mandamus and prohibition. They sought an emergency stay of the trial court's order allowing the child's removal from their home. They also requested writs requiring the trial court to: 1) conduct a hearing wherein they would be provided an opportunity to participate and present testimony regarding the child's removal; and 2) return B.D.M. to their home pending a proper hearing.

¶ 8 On August 17, 2007, after oral arguments before a Court referee, the Vice Chief Justice denied the emergency application for a stay. On August 20, 2007, the biological mother relinquished her parental rights to B.D.M., thereby making the child eligible for adoption. The Sauls filed a petition for adoption in Cleveland County on August 22, 2007. On September 6, 2007, the Sauls filed a supplemental appendix to their application to assume original jurisdiction advising the Court that the trial court has refused to allow them access to the juvenile court records in order to proceed with their petition for adoption.[3] We assume original jurisdiction.

¶ 9 **TITLE 10 O.S. SUPP.2002 § 7208 DOES NOT DIVEST THE TRIAL COURT OF ITS DUTY TO DETERMINE THE BEST INTERESTS OF A CHILD IN A PROCEEDING TO MOVE THE CHILD FROM ONE FOSTER HOME TO ANOTHER. UNDER THE FACTS PRESENTED, A PROPER DETERMINATION OF THE CHILD'S BEST INTERESTS REQUIRES THAT FOSTER PARENTS BE ALLOWED TO PARTICIPATE IN THE PROCEEDING TO REMOVE THE CHILD FROM THEIR HOME.**

¶ 10 The Sauls argue that they have a substantive due process right[4] and a statutory procedural due process right[5] to at least present testimony at a hearing involving the removal of the child from their care. They insist that at the time of the July 30, 2007, hearing B.D.M. was eight months old and that they had cared for her most of her life and developed a strong familial bond with the child. The Sauls argue that because they had cared for B.D.M. for more than three months, 10 O.S. Supp.2002 § 7208(B)(2) allows them to present testimony regarding the "strengths, needs, behavior, important experiences and relationships of the child."

¶ 11 DHS argues that the Sauls' reliance on § 7208 is misplaced because the hearing was merely a hearing concerning lifting the stay of removal and not a removal hearing. DHS insists that the Sauls were given more due process than they might have been enti-

---

2. Title 10 O.S. Supp.2002 § 7208, see note 1, supra.

3. The supplemental appendix was filed on September 6, 2007, and it contains two affidavits. The first affidavit is from the attorney for the Sauls which states that on August 30, 2007, he was informed by the trial judge's clerk that the judge refused to sign an order allowing access to the juvenile records. The second affidavit is from another attorney for the Sauls and it states that not only did the trial judge refuse to sign the order, but he threw it in the trash.

4. The due process clauses of the United States and the Oklahoma Constitutions provide that certain substantive rights-life, liberty and property-cannot be deprived except by constitutionally

adequate procedures. The U.S. Const. amend. 14, § 1 provides in pertinent part:

... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

The Okla. Const. art. 2, § 7 provides:

No person shall be deprived of life, liberty, or property, without due process of law.

5. Title 10 O.S. Supp.2002 § 7208, see note 1, supra.

tled to because the trial court allowed their attorney to present evidence and argument concerning whether they had standing to show that DHS acted arbitrarily in its decision to remove the child. Finally, DHS contends that it has discretion as to where to place the child and the trial court is limited in its review of that discretion.[6]

¶ 12 Courts have a duty to guard with jealous care the interests of minors and to protect infants' rights.[7] The state also has an interest in a child's welfare and a responsibility to protect a child's interest.[8] Under the Oklahoma Children's Code, the paramount consideration in all proceedings concerning a child alleged or found to be deprived is the health, safety and best interests of the chid.[9] The purposes of laws relating to deprived children are to secure the permanency, care, health, safety and welfare of the child and to preserve family ties whenever possible.[10] The function of a foster home environment is to assure stability and to provide a family setting for the child.[11]

**6.** DHS insists that the only real limitation of its authority over placement of a child in custody is that DHS must obtain "approval" if a child is being returned to a perpetrating parent, or if a foster parent with whom a child has been living for more than six months objects in writing after receiving a notice of removal.

**7.** *Tanner v. Schultz,* 1924 OK 119, ¶ 0, 223 P. 174; *In re Hildebrand's Estate v. White,* 1921 OK 128, ¶ 7, 197 P. 445; *In re Sanders' Estate v. Sanders,* 1917 OK 468, ¶ 0, 168 P. 197; *Bolling v. Campbell,* 1912 OK 581, ¶ 0, 128 P. 1091.

**8.** Title 10 O.S.2001 § 7202 of the Oklahoma Foster Care and Out–of–Home Placement Act, provides in pertinent part:

... 2. The state has an interest in and a responsibility to children whose parents do not adequately provide proper care, supervision and protection for them. When circumstances within a family threaten a child's safety or welfare, or when such circumstances deprive a child of proper parental supervision, the state's interest in the child's welfare and in the protection of the public takes precedence over the natural right and authority of the parent; ...

**9.** Title 10 O.S.2001 § 7001–1.2 provides:

A. It is the intent of the Legislature that Chapter 70 of this title shall be liberally construed, to the end that its purpose may be carried out.

B. The paramount consideration in all proceedings concerning a child alleged or found to be deprived is the health and safety and the best interests of the child. The purpose of the laws relating to children alleged or found to be deprived is to:

1. Secure for each such child, the permanency, care and guidance as will best serve the spiritual, emotional, mental and physical health, safety and welfare of the child;

2. Provide expeditious and timely judicial and agency procedures which protect the health, safety and welfare of the child;

3. Preserve, unify and strengthen the child's family ties whenever possible in the child's best interests and for the health and safety of the child;

4. Except as otherwise specified by the Oklahoma Children's Code, provide that reasonable efforts are made to prevent or eliminate the need for removing the child from the home, or to make it possible for the child to safely return to the family's home;

5. Recognize that the right to family integrity, preservation or reunification is limited by the right of children to be protected from abuse and neglect;

6. Remove the child from the custody of the parents of the child when the child's health, safety or welfare is in danger or the child's safety cannot be adequately safeguarded without removal;

7. Recognize that permanency is in the best interests of the child;

8. Ensure that, in the best interests of the child, when family rehabilitation and reunification are not possible or are determined not to be necessary pursuant to the Oklahoma Children's Code, the child will be expeditiously placed with an adoptive family or in another permanent living arrangement; and

9. Assure adequate and appropriate care and treatment for the child, with the use of the least restrictive method of treatment or placement consistent with the treatment or placement needs of the child.

**10.** Title 10 O.S.2001 § 7001–1.2, see note 9, supra.

**11.** Title 10 O.S.2001 § 7202 provides in pertinent part:

... 5. Each child shall be assured the care, guidance, and supervision in a permanent home or foster home which will serve the best interests of the child's moral, emotional, mental, social, and physical well-being;

6. When a child is placed in a foster home, the foster parent shall be allowed to integrate the child into the family setting, make the foster child an integral part of the family, and care for the foster child as the foster parent would for the foster parent's own child;

7. When a child is placed in a foster home, the foster parent shall have a right to exercise parental substitute authority over the child.

¶ 13 The goal of providing a secure permanent environment for a deprived child is evident throughout our statutes governing children. DHS is responsible for the care of deprived children [12] and is required to complete comprehensive assessments of a child and a permanency goal.[13] Constant movement of children is restricted and discouraged. Pursuant to 10 O.S.2001 § 7003–5.4a, movement of a child in custody from one location to another is monitored by the court and notification to the foster parents is required.[14]

¶ 14 Built into the statutory scheme for the protection of children are provisions for constant court supervision as well as participation and input from foster parents.

> The ability to exercise parental substitute authority shall not be construed to authorize corporal punishment on the foster child by the foster parent;
> 8. A foster parent has a recognizable interest in the familial relationship that the foster parent establishes with a foster child who has been in the foster parent's care and custody, and shall therefore be considered an essential participant with regard to decisions related to the care, supervision, guidance, rearing and other foster care services provided to such child;
> 9. Permanent placement shall be achieved as soon as possible for every child in out-of-home placement pursuant to the conditions and restrictions of the Oklahoma Foster Care and Out-of-Home Placement Act. . . .

12. Title 10 O.S.2001 § 7002–2.1 provides:

A. It shall be the responsibility of the Department of Human Services to provide care for deprived children who are committed to the custody of the Department.
B. The Department shall provide for the care of such children pursuant to Article IV of this Code.

13. Title 10 O.S.2001 § 7003–5.3. Permanency is also encouraged by the procedures for obtaining disposition orders from the court. See 10 O.S. 2001 § 7003–5.5. Title 10 O.S.2001 § 7003–5.6d requires a permanency hearing to review the long-term best interests of the child.

14. Title 10 O.S.2001 § 7003–5.4a provides in pertinent part:

A. 1. a. The Department of Human Services shall notify the court having jurisdiction, the appropriate postadjudication review board, the appropriate district attorney, the child's attorney and court-appointed special advocate of

For example, disposition hearings are held every six months to update the court on the status of a deprived child—and foster parents are required to be heard.[15] Title 10 O.S.2001 § 7003–5.6 provides in pertinent part:

> . . . D. In addition to the parties, adequate prior written notice of review hearings shall be provided by the Department pursuant to rules promulgated by the Commission for Human Services to the current foster parents, pre-adoptive parent, or relative providing care for the child. A right to be heard at such hearings shall be provided by the court to the current foster parent of a child, the child's guardian ad litem, and to any pre-adoptive parent or relative providing care for the child. Such

the child, if any, whenever a child in the custody of the Department is moved from one location to another.
b. The Department shall notify the foster family prior to movement of the child pursuant to the provisions of Section 7208 of this title.
c. The Department shall inform the court and the child's attorney of the location of the child. . . .

15. The current version of 10 O.S. Supp.2007 § 7003–5.6 provides in pertinent part:

A. Every case regarding a child alleged or adjudicated to be deprived shall be reviewed by the court at a hearing no later than six (6) months from the date of the child's out-of-home placement and at least once every six (6) months thereafter. A review hearing may be held concurrently with a permanency hearing. A child shall be considered to have entered an out-of-home placement on the earlier of the adjudication date or the date that is sixty (60) days after the date on which the child is removed from the home. Such reviews shall continue until such time as:
1. The conditions which caused the child to be adjudicated have been corrected;
2. The parental rights of the parent are terminated and a final adoption decreed or the child is placed with a suitable custodian or kinship guardian; or
3. The court otherwise terminates jurisdiction.
B. The provisions of this section shall also apply to a child who has been removed from the home of the parent or parents, legal guardian or custodian of the child after the child has been returned to that home.
C. The court may set a case for a review hearing upon the motion of a party at any time, if the hearing is deemed by the court to be for the health, safety or welfare of the child and in the best interests of the child. . . .

notice and right to be heard shall not be construed as requiring any foster parent, pre-adoptive parent or relative to be made a party to such deprived proceedings if not currently a party to the action.

E. The court shall receive all evidence helpful in deciding the issues before the court including, but not limited to, oral and written reports, which may be admitted and relied upon to the extent of their probative value, even though not competent for purposes of an adjudicatory hearing. . . .

DHS has an affirmative statutory duty to cooperate with and provide guidance and support to foster parents and foster families to promote stability and permanency.[16] Foster parents are guaranteed the right to provide input in the planning of services for a child and actively and fully participate in the decision-making process regarding the child pursuant to 10 O.S.2001 § 7206(9).[17]

This statute has been amended three times since 2001, but the pertinent portions remain substantially the same.

16. Title 10 O.S.2001 § 7204 provides in pertinent part:

. . . 13. Cooperate and work with a foster parent in integrating a foster child into a foster family setting. The state agency shall provide a foster parent with information, on an ongoing basis, pertinent to the care, guidance, supervision and rearing of a foster child;
14. Apprise the foster family of changes in laws, rules and policy changes on a timely basis;
15. Cooperate with and help promote foster parent associations. The state agency shall provide foster parent associations with data, information and guidelines on the obligations, responsibilities and opportunities of foster parenting and shall keep the associations and members apprised of changes in laws and rules relevant to foster parenting;
16. Through the individualized service planning process, develop a permanency plan for each child in custody who is placed in foster care with the goal of placement of the child in a home environment that can be reasonably expected to be stable and permanent . . .

17. Title 10 O.S.2001 § 7206 provides:

A. A statement of foster parent's rights shall include, but not be limited to, the right to:
1. Be treated with dignity, respect, and consideration as a professional member of the child welfare team;
2. Be notified of and be given appropriate, ongoing education and continuing education and training to develop and enhance foster parenting skills;
3. Be informed about ways to contact the state agency or the child-placing agency in order to receive information and assistance to access supportive services for any child in the foster parent's care;
4. Receive timely financial reimbursement for providing foster care services;
5. Be notified of any costs or expenses for which the foster parent may be eligible for reimbursement;
6. Be provided a clear, written explanation of the individual treatment and service plan concerning the child in the foster parent's home, listing components of the plan pursuant to the provisions of the Oklahoma Children's Code and the Oklahoma Foster Care and Out–of–Home Placement Act;
7. Receive, at any time during which a child is placed with the foster parent, additional or necessary information that is relevant to the care of the child;
8. Be notified of scheduled review meetings, permanency planning meetings and special staffing concerning the foster child in order to actively participate in the case planning and decision-making process regarding the child;
**9. Provide input concerning the plan of services for the child and to have that input be given full consideration in the same manner as information presented by any other professional on the team;**
10. Communicate with other foster parents in order to share information regarding the foster child. In particular, receive any information concerning the number of times a foster child has been moved and the reasons why, and the names and telephone numbers of the previous foster parent if the previous foster parent has authorized such release;
11. Communicate with other professionals who work with the foster child within the context of the team including, but not limited to, therapists, physicians, and teachers;
12. Be given, in a timely and consistent manner, any information regarding the child and the child's family which is pertinent to the care and needs of the child and to the making of a permanency plan for the child. Disclosure of information shall be limited to that information which is authorized by the provisions of Article V of the Oklahoma Children's Code for foster parents and Article VII of the Oklahoma Juvenile Code;
13. Be given reasonable notice of any change in or addition to the services provided to the child pursuant to the child's individual treatment and service plan;
14. a. Be given written notice of:
(1) plans to terminate the placement of the child with the foster parent pursuant to Section 7208 of this title, and
(2) the reasons for the changes or termination in placement, and

¶ 15 The statute in controversy, 10 O.S. Supp.2002 § 7208, is another example of a statute with a stated purpose "to promote stability for foster children and limit repeated movement of such children from one foster placement to another."[18] Section 7208 provides, unless an emergency situation is involved, foster parents who have had a child for three (3) or more months are entitled to submit to the court written reports or present testimony concerning the strengths, needs, behavior, important experiences, and relationships of the child, in addition to such other information the court may request.[19]

¶ 16 Section 7208 also provides for foster parents with whom the child has resided for more than six (6) months an entitlement to object to the removal.[20] At this juncture, the court is required to conduct an informal hearing within fifteen (15) working days and may order that the child may remain in or be returned to the objecting foster parent's home if the court finds that the Department of Human Services or child-placing agency's decision to remove the child was arbitrary or was inconsistent with the child's treatment and service plan.[21]

¶ 17 DHS's argument that this statute was inapplicable to the proceedings because the hearing was merely to determine whether to stay the removal rather than a removal hearing is unconvincing. To label the nature of the hearing as such puts form over function. The function of the hearing was to determine whether the removal should occur because it was in the child's best interests. Under the unique circumstances of this case, no emergency is involved and the child had not resided with either set of foster parents for a full six months—both had kept the child at least three months. The trial court heard from neither set of foster parents nor did it hear evidence regarding the effects of the move on the child. Under 10 O.S. Supp.2002 § 7208,[22] the trial court was required to determine whether the DHS decision was arbitrary, but neither caseworker involved in the decision to place this child was present to testify and explain the abrupt removal. DHS explained the removal as being consistent with the

b. The notice shall be waived only in emergency cases pursuant to Section 7208 of this title;

15. Be notified by the applicable state agency in a timely and complete manner of all court hearings, including notice of the date and time of any court hearing, the name of the judge or hearing officer hearing the case, the location of the hearing, and the court docket number of the case;

16. Be informed of decisions made by the court, the state agency or the child-placing agency concerning the child;

17. Be considered as a preferred placement option when a foster child who was formerly placed with the foster parent is to reenter foster care at the same level and type of care, if that placement is consistent with the best interest of the child and other children in the foster parent's home;

18. Be provided a fair, timely, and impartial investigation of complaints concerning the foster parent's certification;

**19. Be provided the opportunity to request and receive a fair and impartial hearing regarding decisions that affect certification retention or placement of children in the home;**

20. Be allowed the right to exercise parental substitute authority;

21. Have timely access to the state agency's and child placement agency's appeals process and the right to be free from acts of harassment and retaliation by any other party when exercising the right to appeal;

22. Be given the number of the statewide toll-free Foster Parent Hotline established in Section 7204 of this title; and

23. File a grievance and be informed of the process for filing a grievance.

B. The Department of Human Services, the Office of Juvenile Justice, and a child-placing agency under contract with the Department shall be responsible for implementing this section.

C. Nothing in this section shall be construed to create a private right of action or claim on the part of any individual, the Department of Human Services, the Office of Juvenile Affairs or any child-placing agency. (Emphasis added.)

We recognize that was not intended to create a private right of action, nevertheless it does express legislative intent to include foster parents in the decision making process.

**18.** Title 10 O.S. Supp.2002 § 7208, see note 1, supra.

**19.** Title 10 O.S. Supp.2002 § 7208, see note 1, supra.

**20.** Title 10 O.S. Supp.2002 § 7208, see note 1, supra.

**21.** Title 10 O.S. Supp.2002 § 7208, see note 1, supra.

**22.** Title 10 O.S. Supp. § 7208, see note 1, supra.

long-term treatment plan of reuniting the half-siblings.[23]

¶18 Pursuant to 10 O.S.2001 § 7202,[24] when two or more foster children are siblings, reasonable attempts should be made to place them in the same temporary or permanent home or at least be allowed contact or visitation with one other. However, the standard in determining whether they should be placed in the same foster placement or allowed contact with other siblings is the best interests of each sibling.[25] The trial court could not have made such a determination without hearing from both sets of foster parents and from the DHS caseworkers involved. The effect of the trial court's order as applied to the facts of this case was to make placing a child with a sibling in and of itself automatically in the child's "best interests" in degradation of § 7202.[26] The trial court's function is not to rubber stamp a DHS placement plan.

¶19 We have previously held that foster parents, who are also persons *in loco parentis*,[27] have standing to intervene as a matter of right and assert their justiciable interest in an adoption proceeding.[28] Other jurisdictions have determined that foster parents have standing in some custody proceedings as well.[29] The Sauls have been given statutory standing and due process rights which allow full participation in custody proceedings.[30] When viewed collectively, it is clear that applying § 7208 to forego the Sauls an opportunity to fully participate in the proceedings would be in degradation of the trial court's duty to determine the child's best interests. There is no indication that § 7208 was intended by the Legislature to divest the trial court of this duty, especially when the overall statutory scheme of stability, permanency and foster parent input concerning custody decisions is considered.[31] Section

23. The notice dated June 12, 2007, is a form notice which provides five day removal notice that the child would be moved "to place in another resource: ☐ with sibling(s)."

24. Title 10 O.S.2001 § 7202 provides in pertinent part;
    ... 12. When two or more children in foster care are siblings, every reasonable attempt should be made to place them in the same home. In making a permanent placement, such children should be placed in the same permanent home or, if the siblings are separated, should be allowed contact or visitation with other siblings; provided, however, the best interests of each sibling shall be the standard for determining whether they should be placed in the same foster placement or permanent placement, or allowed contact or visitation with other siblings....

25. Title 10 O.S.2001 § 7202, see note 24, supra.

26. Title 10 O.S.2001 § 7202, see note 24, supra.

27. *Workman v. Workman*, 1972 OK 74, ¶10, 498 P.2d 1384 *overruled on other grounds* by *Unah By and Through Unah v. Martin*, 1984 OK 2, 676 P.2d 1366, provides the definition of *in loco parentis* as meaning in place of parent. Persons in loco parentis are ones who have assumed the status and obligations of a parent without the formalities of adoption.

28. *In the Matter of B.C.*, 1988 OK 4, ¶20, 749 P.2d 542.

29. *In the Interest of Dively*, 79 Ill.App.3d 428, 431, 34 Ill.Dec. 812, 398 N.E.2d 635, 637 (1979)[Foster parents are "persons of interest" under statute allowing such persons to request a change in custody.]; *In the Matter of Stevens*, 51 A.D.2d 877, 380 N.Y.S.2d 137 (1976) [Foster parents have right to intervene in abandonment proceeding.]; *In re B.G.*, 11 Cal.3d 679, 114 Cal.Rptr. 444, 523 P.2d 244, 253–54 (1974) [Foster parents as *de facto* parents were permitted to appear as parties in juvenile proceedings.]; *In re C.M.D.*, 256 A.2d 266, 268 (Del.1969) [Foster parents have standing to petition for custody.]; *Trotter v. Pollan*, 311 S.W.2d 723, 729 (Tex.Civ. App.1958) [Foster parents stood *in loco parentis* and had justiciable interest in controversy involving custody of child.]; *See also, Michael G. Walsh*, Standing of Foster Parents to Seek Termination of Rights of Foster Child's Natural Parents, 21 A.L.R.4th 535 (1983).

30. See, 10 O.S. Supp. § 7208, see note 1, supra, 10 O.S.2001 § 7003–5.4a, see note 13, supra, 10 O.S. Supp.2007 § 7003–5.6, see note 14, supra, 10 O.S.2001 § 7204, see note 15, supra, 10 O.S. 2001 § 7206, see note 16, supra.

31. In construing statutes, when possible, different provisions must be construed together to effect a harmonious whole. *Villines v. Szczepanski*, 2005 OK 63, ¶9, 122 P.3d 466. Legislative intent is ascertained from the whole act considering general purpose and objective with relevant provisions taken together to give full force and effect to each. *Keating v. Edmondson*, 2001 OK 110, ¶8, 37 P.3d 882; *World Pub. Co. v. Miller*, 2001 OK 49, ¶7, 32 P.3d 829.

7208 states on its face that it was intended to discourage DHS from abruptly moving children from one foster home to another. Accordingly, another hearing is required in which the foster parents must be allowed to participate.

## CONCLUSION

¶ 20 The goal of providing for the permanency, care, health, safety and welfare of children is found throughout our statutes relating to deprived children. The function of a foster home is to assist in carrying out these goals. Involved in this cause are two foster families who have assisted in providing for the care of B.D.M. Both families are interested in adopting the child, yet neither was included in the decision-making process to move the child from one home to another. Built into the statutory scheme for the protection of children are provisions for constant input, coordination, and participation from foster parents. These provisions provide foster parents with standing and due process rights. Title 10 O.S. Supp.2002 § 7208 was intended to prevent DHS from suddenly moving foster children from one home to another. It was not intented to divest the trial court from considering the child's best interests when determining whether a child should be placed with a half-sibling. Because the Sauls were not allowed to participate in the removal proceedings, we assume original jurisdiction and grant the Sauls' request for a writ requiring the trial court to conduct a hearing in which they have an opportunity to participate and present testimony regarding the child's removal. However, we decline to require that the child be returned to the Sauls pending that prompt hearing.

**ORIGINAL JURISDICTION ASSUMED; WRITS GRANTED IN PART.**

ALL JUSTICES CONCUR.