GRAYSON et al. v. PURE OIL CO.

No. 29873.   Oct. 28, 1941.

*118 P. 2d 644.*

Watts & Watts, of Wagoner, for plaintiffs in error.

C. A. Ambrister, of Muskogee (Alvin Richards, of Tulsa, of counsel), for defendant in error.

RILEY, J.   This appeal presents the question of whether payment in an agreed judgment in an action in the nature of an accounting for oil and gas produced and sold from 37½ acres of land involved in the original action brought by Isom Grayson et al. included release of liability of the Pure Oil Company on two supersedeas bonds, one executed by James A. Harris and the Ohio Cities Gas Company (then the Pure Oil Company).

It appears that in 1917, Isom Grayson and about 145 other plaintiffs commenced an action in the district court of Creek county against James A. Harris, William H. Harris, James H. Kennedy, Quaker Oil & Gas Comany, James Brann, Dixie Q. Brown et al., to recover an interest in 320 acres of land, being the allotments of two Creek freedmen.

At that time James A. Harris and William H. Harris claimed to be the owners of an undivided one-half interest in fee of said lands and James A. Brann claimed to be the owner in fee of the other undivided one-half interest. The Quaker Oil & Gas Company held an oil and gas lease covering 37½ acres of the land. Before judgment the Ohio Cities Gas Company acquired the oil and gas lease. Later the Ohio Cities Gas Company became the Pure Oil Company.

On February 21, 1920, a judgment and decree was entered in said cause wherein James Brann was decreed to be the owner of an undivided one-half interest of all of said land. James A. Harris and William H. Harris were de-

creed to be the owners of an undivided 2/22 interest in all of said land, and plaintiffs, with exception of three or four of them, were decreed to be the owners of the 9/22 interest.

That action was known and designated as cause No. 6332 in the district court of Creek county.

James A. Harris, William H. Harris, and Ohio Cities Gas Company appealed from said decree, and in connection with said appeal executed a supersedeas bond in the sum of $1,000, conditioned that they would not, while in possession of the property involved, suffer to be committed any waste, and if the said judgment be affirmed, they would pay the value of the use and occupation of said property from the date of the bond until delivery of possession. Said decree provided that James A. and William H. Harris and the Ohio Cities Gas Company should account to plaintiffs for the oil and gas taken from said lands by said defendants, according to their respective interests. A receiver was appointed for the 9/22 interest decreed to the plaintiffs.

On appeal to this court, the judgment was reversed and remanded for a new trial because of error of the trial court in excluding certain evidence offered in support of the defense of the statute of limitations having run against plaintiffs. Harris et al. v. Grayson et al., 146 Okla. 291, 294 P. 187. In reversing, this court said:

"In the opinion of this court, there is but one issue undetermined and which should be heard by the trial court. That is, did Brann and Butte hold possession of this property adversely to the rights of the plaintiffs for a time sufficient, tacked to the adverse possession of the defendants, to bar the plaintiffs under the statute of limitations? As to that question, we express no opinion."

The opinion was filed December 2, 1930.

A new trial was had, and on November 28, 1932, a new judgment was entered substantially the same as the former judgment except as to a certain 40-acre tract, as to which the trial court held the statute of limitations had run against the plaintiffs who were not minors at the time of the institution of the action in 1917.

Defendants James A. Harris, William H. Harris, and Pure Oil Company appealed from that judgment and gave a supersedeas bond in the sum of $750, conditioned substantially the same as the bond given in the former appeal. The decree of November 28, 1931, was affirmed by this court in Harris et al. v. Grayson et al., 173 Okla. 163, 47 P. 2d 879. When the mandate of this court was ordered spread of record in the trial court, the court included an order "that the defendants James A. Harris, William H. Harris and the Ohio Cities Gas Company, now the Pure Oil Company, are hereby directed to file in this cause, on or before 30 days from the date of this order (May 1, 1936) their accounting of all rents, royalties, profits and income produced or derived from the real property involved in this action, as directed in this court's judgment of November 2nd, 1931." (Nov. 28, 1931.) It may here be noted that the case referred to was still case No. 6332 in the district court of Creek county. The Pure Oil Company, objecting to being required to account upon the ground that the judgment of November 2 (Nov. 28) 1931, directed an accounting as to James A. Harris and William H. Harris, but did not direct an accounting by defendant Pure Oil Company, filed its separate statement of account, covering its operations as to the 37½ acres covered by its lease. Therein it set out that it had received total income from said operations of $82,577.74, and had expended in developing and operating said property the sum of $86,425.19, showing excess in expense of operating, over receipts, in the sum of $3,847.42, and claimed reimbursement by plaintiffs of 9/22 of said sum, or $1,573.85, and prayed for judgment therefor. While the appeal from the judgment of November 28, 1931, was pending in the Supreme Court, James A. Brann, who was appointed receiver as to the 9/22 interest in the land involved, was discharged and in his stead

Eli Wilkerson was appointed as such receiver.

After Pure Oil Company had filed its statement of account and claim for reimbursement, plaintiffs and Eli Wilkerson, receiver, filed a lengthy answer, response, and motion, wherein in substance they alleged that the predecessor in interest of Pure Oil Company entered upon said land without the knowledge or consent of plaintiffs and they as well as the Pure Oil Company were trespassers; that certain property in the nature of fixtures had been placed on said premises whereby plaintiffs became the owner of a 9/22 interest therein, and in effect claimed an accounting for the full value of 9/22 of the oil taken from said premises, as well as an accounting for 9/22 interest in the alleged fixtures. Pure Oil Company filed its reply thereto, thereby forming the issues in the accounting feature of the case.

It appears that before any hearing was had on these issues, nearly all the plaintiffs, through their respective attorneys, authorized J. T. Smith, the attorney for some of the plaintiffs, to take full charge of the litigation or accounting. Then shortly before the date which had been set for a hearing, J. T. Smith, representing, as stated above, nearly all the plaintiffs, and Alvin Richards, the attorney for Pure Oil Company, agreed upon the terms of a settlement which was to be consummated and evidenced by a judgment and decree of the court.

It was left to Mr. Richards to prepare the journal entry of judgment, which was to provide for a payment by Pure Oil Company to the receiver, for the benefit of plaintiffs, the sum of $10,000.

Mr. Richards prepared the proposed judgment and submitted it to Mr. J. T. Smith, who placed his "O. K." thereon with his signature. It was also approved by Watts & Watts, attorneys for certain of the plaintiffs. F. E. Riddle, appearing for James A. and William H. Harris, also approved it. It was then presented to the court, signed by the judge, and filed as the judgment of the court.

All parties to this appeal agree that this was in the nature of an agreed judgment. Therein the court made a finding that during the entire production period, which the lease operated, the total amount expended in developing and operating said lease, as shown by the statement of account of Pure Oil Company, was $98,200.36, but that the sum of $84,352.94 was the reasonable cost of development and operation, and that the plaintiffs and their successors who were owners of 9/22 interest in said lands were entitled to recover from defendants the sum of $10,000, "being the difference between the gross revenue accrued from said premises and the reasonable cost of developing, operating, and marketing the oil from said lands herein involved."

Judgment was entered accordingly and the full amount therein was paid by Pure Oil Company. It appears that thereafter Peter Hawkins, one of the plaintiffs represented by his attorney, Watts & Watts, commenced an action in Wagoner county seeking judgment on the two supersedeas bonds above mentioned.

Thereupon the Pure Oil Company filed its motion in the original cause No. 6332 in the district court of Creek county to require plaintiffs to satisfy the judgment against the Pure Oil Company. The motion alleged at some length the proceedings theretofore had, the rendition of the $10,000 judgment and payment thereof, and further alleged:

". . . That prior to the entry of said decree and the acceptance of said judgment, all of the attorneys representing the plaintiffs in said cause had authorized the said J. T. Smith, in writing, to compromise and settle the claims against the Pure Oil Company for said sum; that said sum was paid by the Pure Oil Company with the understanding and agreement that the same should be a full, final and complete satisfaction of any and all claims that the plaintiff or any of them might have against said movant, the Pure Oil Company; that in violation of the terms of said stipulation and agreement and decree of the court, it has been and is being contended that

claims involved in said action have not been settled or disposed of and suit is being instituted thereon. . . ."

The prayer is for an order of the court directing the clerk to satisfy and cancel any and all claims against the Pure Oil Company incident to or arising out of or involved in said cause. Upon hearing of said motion, wherein evidence by both parties was presented, the trial court found and held: ·

". . . That the accounting and settlement made by the Pure Oil Comany in the above-entitled cause and the findings of fact, conclusions of law and the decree based thereon was a final, full and complete settlement of all claims arising out of and in said cause numbered 6332, including the bonds in the sum of $1,000 and in the sum of $750; that there was no further amounts due from the Pure Oil Company to the plaintiffs in this cause or any of them by reason of the execution of said bonds and that was the intention of said parties and said findings of fact and decree so recite that said Pure Oil Company was absolved from all liability upon the payment of said $10,000.

"It is therefore ordered that the Clerk of this Court cancel the bond in the sum of $750 executed on the 7th day of December, 1931, and the bond in the sum of $1,000 executed on the 19th day of May, 1920, and that the movant be released from any and all liability by reason of having over executed the same."

This appeal is from said order.

There appear to be two petitions in error. The first is on behalf of all the plaintiffs in the original action, signed by Watts & Watts, "Attorneys for Plaintiffs in Error." The second petitioin in error is entitled the same as the other, but states that it is by plaintiffs in error represented in the trial court by A. A. Hatch, Albert C. Hunt, H. B. Parris, and S. E. Gidney. But the parties filing the second petition in error make no allegation that Watts & Watts are not representing them as well as the other plaintiffs in error, and since no separate briefs have been filed going to the second petition and no authorities are cited in support of same, we will treat said second petition in error as having been abandoned.

There are 16 assignments of alleged error, but the question presented is whether the agreed judgment of June 10, 1937, in favor of plaintiffs and against the Pure Oil Company, and the payment thereof, operated so as to release the Pure Oil Company of any other or further liability to plaintiffs, including its liability, if any, on the two supersedeas bonds.

The parties agree that said judgment was an agreed judgment, and that the rule is that an agreed judgment is regarded as a contract between the parties and must be construed as any other contract. Such is the rule as stated in 34 C. J. 133, and followed in Cobb v. Killingsworth, 77 Okla. 186, 187 P. 477. But as it has the sanction of the court, and is entered as a determination of the controversy, it has the same force and effect as any other judgment, and in the absence of fraud or mistake is valid and binding as such, as between the parties thereto and their privies.

Plaintiffs in error contend that the two supersedeas bonds were not taken into consideration and the liability of the Pure Oil Company, as one of the makers of said bonds, was not released by said judgment. Defendant in error contends, and the trial court found and held, that any and all liability of the Pure Oil Company, on account of the execution of said bonds, was included in the compromise judgment though not specifically mentioned. Consideration must be given to the terms of said judgment, together with the evidence before the court. Since the question of title and the respective interests of the parties in the lands involved in the original action were settled and finally determined before the accounting by the Pure Oil Company was ordered, the question of waste committed or suffered to be committed by the Pure Oil Company as to the 37½ acres covered by its lease was a question which could and should have been presented in the accounting proceeding. Plaintiffs in their answer and response made no claim of waste com-

mitted or suffered to be committed aside from the oil and gas taken from said lands. A separate accounting and judgment appear to have been had as to defendants James A. and William H. Harris.

In the agreed judgment above mentioned, the court made extensive findings of fact. One of these findings was, "that this action is in the nature of an accounting for oil and gas produced and sold from a 37½-acre lease, known as the Nancy Colbert lease," describing the particular 37½ acres covered by said lease. After specific findings of fact concerning the proceedings theretofore had, as to how the Pure Oil Company and its predecessors in interest acquired the lease, the court further found:

"The court further finds that after numerous appeals the title to said land has been settled by the final judgment of this court, whereby the lessors of the defendant, the Pure Oil Company, maintained their title as to thirteen twenty-seconds interest and the plaintiffs herein, or their successors, recovered or substantiated their title to a nine twenty-seconds interest.

"The court further finds that the original plaintiffs herein, or their successors, or those to whom proper conveyances have been executed, are owners of all interest in said property, entitled to an accounting against the defendant, the Pure Oil Company, and that Eli Wilkinson is the duly appointed and acting receiver herein."

Then after making its findings as to the total income derived from said lease and the reasonable cost of development and operation, the court found:

". . . That said defendants have been guilty of no misconduct, and that plaintiffs and their successors owning a nine twenty-seconds interest in said lands are entitled to recover from said defendants the sum of $10,000, being the difference between the gross revenue accrued from said premises and the reasonable cost of developing, operating and marketing the oil from said lands herein involved."

And finally the court found:

". . . That payment of the $10,000 above set forth should be made by the Pure Oil Company to Eli Wilkinson, the duly appointed and acting receiver herein, upon the execution by said receiver of an additional bond in this case in the sum of $5,000 and that upon the payment of said sum the said receiver is hereby authorized and empowered to satisfy the judgment roll and release the defendants herein of any other and further liability."

Pure Oil Company contends that this latter finding and order clearly include and show that the parties intended that the $10,000 judgment and payment thereof should release the Pure Oil Company from any and all liability growing out of the long-drawn controversy.

Plaintiffs in error contend that said finding and order should be read and construed as though, "incident to this accounting action," were added thereto. They contend that this limitation is clearly implied in the agreement. They assert:

"There can't be any other meaning given to this judgment without doing violence to the plainly expressed agreement that defendant should account, the basis of the accounting, the amount of liability on the accounting and the release of liability upon payment of same."

But with this we cannot agree. The agreement, of course, was that defendant should account. The basis of the accounting was that plaintiffs were entitled to be paid the value of 9/22 of the oil and gas taken from said premises, less their proportionate share of the cost of development and operation. The court found that the total value of the oil and gas taken from the lease was $94,352.94. Of this amount plaintiffs would have been entitled to their 9/22 share, in the sum of about $38,189.79, had they not been chargeable for 9/22 of the cost of production, operation, and marketing of the oil and gas. The court in effect found that plaintiffs were chargeable with 9/22 of the reasonable cost of development, operation, and marketing.

The court found the reasonable cost of development, operation, and marketing the oil and gas to be $84,-349.94. Nine twenty-seconds of that amount is about $34,510.86. Deducting this from the 9/22 of the total value of the oil and gas taken, would leave but $3,678.93, which plaintiffs were entitled to recover as and for the value of their part of the oil and gas. Notwithstanding the court's rendering judgment in favor of plaintiffs in the sum of $10,000, or about $6,321 more than the value of plaintiffs' share of the oil and gas taken after deducting their proportionate share of the reasonable cost of development, operation, and marketing, plaintiffs agreed to all these findings of fact as to total value of oil and gas taken, reasonable cost of development and marketing of the oil and gas, and are bound thereby. What, then, could have been the consideration for this extra $6,321?

It must have been something aside from the value of plaintiffs' share of the oil and gas taken from the land after deducting their proper share of the reasonable cost of development, operation, and marketing.

It is true that plaintiffs in their pleadings claimed that they were entitled to 9/22 of the value of all oil and gas without being charged with any part of the cost of development, operation, etc. But when they consented to and agreed to the findings of fact and conclusions of law, they abandoned that part of their claim.

There is evidence in the record that the agreement and judgment were a general settlement of any litigation against the Pure Oil Company.

The record as a whole bears out this contention. The trial court so found and held, and the record sustains the findings and order.

Judgment and order are affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, BAYLESS, GIBSON, HURST, and DAVISON, JJ., concur. ARNOLD, J., absent.