2008 OK 30

**Raymond and Janice SKRAPKA, Petitioners,**

v.

**The Honorable Judge Stephen BONNER, and the State of Oklahoma, ex rel. Department of Human Services, Respondents.**

**No. 105,413.**

Supreme Court of Oklahoma.

April 1, 2008.

Rehearing Denied June 23, 2008.

**24.** *Liddell, supra* note 2.

M. Eileen Echols, David W. Echols, Amy L. Howe, Oklahoma City, OK, for Petitioners.

Jonna Geitgey, Assistant General Counsel, Department of Human Services, Oklahoma City, OK, for Respondent, Department of Human Services.

Meredith Tipton, Assistant District Attorney, Norman, OK, for Respondent, Trial Judge.

KAUGER, J.

¶ 1 The issue presented is whether an aunt and uncle have any right whatsoever to participate in a review proceeding for placement of nieces and a nephew when they have never had custody of the children, have never acted *in loco parentis,* and are not persons guaranteed to be allowed to intervene pursuant to 10 O.S. Supp.2002 § 7003–7.1(C).[1] Under the facts of this cause, a proper determination of the children's best interests requires that the aunt and uncle be allowed to participate in the review proceedings. Original jurisdiction is assumed and the Writ of Mandamus and Writ of Prohibition are granted in part.

---

1. Title 10 O.S. Supp.2002 § 7003–7.1(C) provides:

C. 1. If the child is placed in the custody of the Department of Human Services, whether in emergency, temporary or permanent custody, the Department shall determine the appropriate placement of the child. However, under no circumstances may the Department of Human Services return a child to a parent that contributed to the child being deprived due to abuse or neglect, without prior approval of the court. Any change in the placement of a child adjudicated to be deprived shall be in accord with the provisions of subsection B of Section 7003–5.4a of this title.

## FACTS

¶ 2 Stacy Boggs (mother) is the biological mother of a boy, N.M.R, (boy) and two girls, K.M.B. and H.J.B. (girls). Melvin Whitaker (Whitaker) is the biological father of the boy, and Westley Boggs (father) is the biological father of both girls. The age of the boy is unclear from the record, but the girls are ages two and six. On August 16, 2007, a trial judge in Oklahoma County entered an order granting the mother a divorce from the father. The mother was awarded custody of her two daughters and the father was awarded standard visitation. The order provides that the father's visitation "shall be opposite of" the father's "other child." The age of the "other child" is not revealed in the record.

¶ 3 According to the petitioners, Raymond and Janice Skrapka, the maternal aunt and uncle of the boy and girls (aunt and uncle), there were allegations raised during the divorce that the father's son from a previous marriage had molested the boy and one of the girls, which explains the language in the divorce decree limiting visitation to when the father's son from a previous marriage was absent. The attorney for the Oklahoma Department of Human Services (DHS) admits that the molestation occurred.

¶ 4 According to the aunt and uncle, as of August 23, 2007, Whitaker and the mother were accused of abusing the boy. On August 24, 2007, DHS took all three children into custody. In September of 2007, child abuse charges were filed in Cleveland County Court against Whitaker and the mother. DHS evaluated the home of the aunt and uncle, and they were approved as an acceptable placement for the children. The aunt

---

2. The person, institution, agency, or Department having legal custody of a child pursuant to an order of the court shall receive notice of court proceedings regarding the child and shall be allowed to intervene upon application as a party to all court proceedings pertaining to the care and custody of the child including, but not limited to: adjudication, disposition, review of disposition, termination of parental rights and proceedings pursuant to the Inpatient Mental Health and Substance Abuse Treatment of Minors Act.

and uncle purchased additional beds, bedding, and clothing for the children and began converting their garage into an additional bedroom to make room for the children.

¶ 5 However, rather than placing all three children together with the aunt and uncle, DHS decided to separate them. It placed the boy with a family member outside of his school district and placed the girls with their non-custodial father who also apparently had custody of his son who was accused of molesting one of the girls. The Honorable Stephen Bonner, a trial judge in Cleveland County, was reviewing the DHS placement of the children when, on December 7, 2007, the aunt and uncle filed a motion to intervene in the proceeding.

¶ 6 The aunt and uncle argued that they were entitled to be considered by the court for an award of custody pursuant 12 O.S. Supp.2003 § 2024 [2] and 10 O.S. Supp.2007 § 21.1.[3] The motion hearing was held on

---

2. Title 12 O.S. Supp.2003 § 2024 provides in pertinent part:

A. INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action:
1. When a statute confers an unconditional right to intervene; or
2. When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest.
B. PERMISSIVE INTERVENTION. Upon timely application anyone may be permitted to intervene in an action:
1. When a statute confers a conditional right to intervene; or
2. When an applicant's claim or defense and the main action have a question of law or fact in common.
When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.....

3. Title 10 O.S. Supp.2007 § 21.1 provides:

A. Except as otherwise provided by this section, custody should be awarded or a guardian appointed in the following order of preference according to the best interests of the child to:
1. A parent or to both parents jointly;
2. A grandparent;
3. A person who was indicated by the wishes of a deceased parent;
4. A relative of either parent;
5. The person in whose home the child has been living in a wholesome and stable environment including but not limited to a foster parent; or
6. Any other person deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child.
B. It is the intent of the Legislature that every attempt be made to place a child with a member of the child's family.
C. In addition to subsection E of this section, when a parent having custody of a child becomes deceased or when custody of a child is judicially removed from the parent having custody of the child, the court may only deny the noncustodial parent custody of the child or guardianship of the child if:
1. a. for a period of at least twelve (12) months out of the last fourteen (14) months immediately preceding the determination of custody or guardianship action, the noncustodial parent has willfully failed, refused, or neglected to contribute to the child's support:
(1) in substantial compliance with a support provision or an order entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support, or
(2) according to such parent's financial ability to contribute to the child's support if no provision for support is provided in a decree of divorce or an order of modification subsequent thereto, and
b. the denial of custody or guardianship is in the best interest of the child;
2. The noncustodial parent has abandoned the child as such term is defined by Section 7006–1.1 of this title;
3. The parental rights of the noncustodial parent have been terminated;
4. The noncustodial parent has been convicted of any crime against public decency and morality pursuant to Title 21 of the Oklahoma Statutes;
5. The child has been adjudicated deprived pursuant to the Oklahoma Children's Code and the noncustodial parent has not successfully completed a service or treatment plan if required by the court; or
6. The court finds it would be detrimental to the health or safety of the child for the noncustodial parent to have custody or be appointed guardian.
D. The court shall consider the preference of the child in awarding custody of the child pursuant to Section 113 of Title 43 of the Oklahoma Statutes.
E. 1. In every case involving the custody of, guardianship of or visitation with a child, the

December 12, 2007. At the hearing, the attorney for DHS admitted that the sexual abuse occurred, but apparently did not take the abuse seriously, because she also said that all of the children had "perpetrated" on each other. DHS argued that the children were placed with Boggs because counseling was nearly complete, an extensive safety plan was in place, and there were alarms on the doors for the children.[4] Apparently, under the mistaken belief that consent decrees are invalid if they are uncontested, the trial court threw the Oklahoma County consent divorce decree "out the window" and refused to recognize that it had limited Boggs' visitation because of the sexual abuse only a few

court shall determine whether any individual seeking custody or who has custody of, guardianship of or visitation with a child:

a. is or has been subject to the registration requirements of the Oklahoma Sex Offenders Registration Act or any similar act in any other state,

b. has been convicted of a crime listed in the Oklahoma Child Abuse Reporting and Prevention Act or in Section 582 of Title 57 of the Oklahoma Statutes,

c. is an alcohol-dependent person or a drug-dependent person as established by clear and convincing evidence and who can be expected in the near future to inflict or attempt to inflict serious bodily harm to himself or herself or another person as a result of such dependency,

d. has been convicted of domestic abuse within the past five (5) years,

e. is residing with a person who is or has been subject to the registration requirements of the Oklahoma Sex Offenders Registration Act or any similar act in any other state,

f. is residing with a person who has been convicted of a crime listed in the Oklahoma Child Abuse Reporting and Prevention Act or in Section 582 of Title 57 of the Oklahoma Statutes, or

g. is residing with a person who has been convicted of domestic abuse within the past five (5) years.

2. There shall be a rebuttable presumption that it is not in the best interests of the child to have custody, or guardianship granted to:

a. a person who is or has been subject to the registration requirements of the Oklahoma Sex Offenders Registration Act or any similar act in any other state,

b. a person who has been convicted of a crime listed in the Oklahoma Child Abuse Reporting and Prevention Act or in Section 582 of Title 57 of the Oklahoma Statutes,

c. an alcohol-dependent person or a drug-dependent person as established by clear and convincing evidence and who can be expected in the near future to inflict or attempt to inflict serious bodily harm to himself or herself or another person as a result of such dependency,

d. a person who has been convicted of domestic abuse within the past five (5) years,

e. a person who is residing with an individual who is or has been subject to the registration requirements of the Oklahoma Sex Offenders Registration Act or any similar act in any other state,

f. a person who is residing with a person who has been previously convicted of a crime listed

in the Oklahoma Child Abuse Reporting and Prevention Act or in Section 582 of Title 57 of the Oklahoma Statutes, or

g. a person who is residing with a person who has been convicted of domestic abuse within the past five (5) years.

3. Custody of, guardianship of, or any visitation with a child shall not be granted to any person if it is established that the custody, guardianship or visitation will likely expose the child to a foreseeable risk of material harm.

F. Except as otherwise provided by the Oklahoma Child Supervised Visitation Program, court-ordered supervised visitation shall be governed by the Oklahoma Child Supervised Visitation Program.

G. For purposes of this section:

1. "Alcohol-dependent person" has the same meaning as such term is defined in Section 3–403 of Title 43A of the Oklahoma Statutes;

2. "Domestic abuse" has the same meaning as such term is defined in Section 60.1 of Title 22 of the Oklahoma Statutes;

3. "Drug-dependent person" has the same meaning as such term is defined in Section 3–403 of Title 43A of the Oklahoma Statutes; and

4. "Supervised visitation" means a program established pursuant to Section 110.1a of Title 43 of the Oklahoma Statutes.

4. The December 12, 2007, hearing transcript provides in pertinent part at p. 22:

... So there isn't enough evidence out there for this Court to do anything to do a veto over the current placement, because we've got the placement with the natural parent.

Ms. Tipton: And, your Honor, as I stated, I'm not trying to-I don't think DHS nor the State is trying to hide anything about the past of these children. As I said, they've almost all perpetrated on each other.

It's a very sad situation that this has happened and gotten that far. But as you state, I think any testimony that Mr. McCracken would offer about that history, you already have in your file.

And so we would stipulate that, yes, that has happened. They've pretty much all perpetrated on each other. But as I state, there's an extensive safety plan in place. We have a father that has no new allegations of deprivation, but for in the very beginning he wasn't taking [name omitted] to counseling. There's alarms on the doors for these children....

months earlier.[5] It denied the motion, but ordered DHS to investigate and consider the aunt and uncle for possible placement if the children were sexually abused again!

¶ 7 On December 28, 2007, the aunt and uncle filed an Application to Assume Original Jurisdiction and Petitions for Writ of Mandamus and Writ of Prohibition in this Court. They seek a Writ of Mandamus to require the trial court to enforce the divorce decree or in the alternative, to hear evidence as to why the placement is contrary to the children's best interests. They request that we issue a Writ of Prohibition to prohibit DHS from violating the divorce decree or in the alternative to require DHS to show cause as to why the prior order is being ignored.

¶ 8 **UNDER THE FACTS PRESENTED, A PROPER DETERMINATION OF THE CHILDREN'S BEST INTERESTS RE-QUIRES THAT THE AUNT AND UNCLE BE ALLOWED TO PARTICIPATE IN THE PROCEEDINGS.**

¶ 9 DHS argues that the placement it has made for the children is in the children's best interests and the aunt and uncle have no right to intervene and participate in the proceedings. DHS offers no explanation as to why the aunt and uncle would not be a suitable placement choice. Rather, it insists that it was entitled to assess the situation and that it was entitled to place the girls with their non-custodial natural father and the boy with another relative. The aunt and uncle argue that they have a due process right to be heard and present evidence regarding the allegations of sexual abuse when the trial court reviews the DHS placement of their nieces and nephew because, pursuant to 10 O.S. Supp.2007 §§ 21.1 and 22.1,[6] if the

5. The transcript of the December 12, 2007, hearing provides in pertinent part at pp. 32–33:

> ... THE COURT: Counsel, but it makes a difference whether or not the parties agreed to it or whether there was a testimonial hearing heard at this particular point in time, sir.
> MR. McCRACKEN: My client just informed me, Judge, that it was agreed to and ordered by Judge Hammond.
> THE COURT: Thank you, sir. It does make a difference.
> MR. McCRACKEN: Okay.
> THE COURT: Because if it was agreed to, then it wasn't a contested hearing as far as that is concerned.
> MR. McCRACKEN: But unfortunately it is still a valid court order that this Court has to recognize. It's a valid court order involving this chile—
> THE COURT: Counsel, that goes out the window. This Court does not recognize those court orders once these children are placed in DHS custody....
> MR. McCRACKEN: Judge, all we're asking is why is DHS ignoring the court order? DHS, by placing these children with Mr. Boggs, is ignoring the very court order that was entered in March that these two little girls should not be on visitation at the same time [name omitted] is there.
> All we're asking is, why are you ignoring it? We have placement here that's available for all the children to be together with family members. They don't have to be separated. And then they're not under the guise of some appearance of impropriety. That's all we're asking.
> THE COURT: Counsel, I'll just reiterate two things. One, it was a consent decree. Number two, once the DHS case is filed, the custo-

dy ordered entered in any family law case are held in abeyance, not enforceable at all....

6. Title 10 O.S.2001 § 22.1 provides in pertinent part:

> A. 1. The Oklahoma Legislature recognizes that:
> a. children who have been abused, who are dependent or neglected, or whose parents, for whatever reason, may be unable or unwilling to provide care for their children, are best served when they can be cared for by grandparents or other suitable relatives instead of placing those children in foster care with the State of Oklahoma, and
> b. while grandparents or other relatives are often willing to provide for the care of children who can no longer remain with their parents, there may exist financial obstacles to the provision of such care, or there may be a need for other services to enable the children to remain with their grandparents or other relatives in order to prevent those children's entry into the foster care system.
> 2. It is the intent of the Oklahoma Legislature in enacting this section to:
> a. recognize family relationships in which a grandparent or other relative within the third degree of relationship to the child is the head of a household that includes a child otherwise at risk of foster care placement by the Department of Human Services,
> b. enhance family preservation and stability by recognizing that most children in placements with grandparents and other relatives within the third degree of relationship to the child do not need intensive supervision of the placement by the courts or by the Department of Human Services,

natural mother and father are found to be unfit, the aunt and uncle are statutorily required to be considered for custody of the children. They also contend that the trial court erred in refusing to consider the consent decree at all.

¶ 10 It appears from the record that the trial court was under some misapprehension about the nature of a consent decree.[7] We have, in the context of a divorce proceeding, described a consent judgment as an agreement of the parties entered upon the record with the sanction of the court.[8] The judgment[9] is the result of negotiations between the parties and the subsequent settlement of the issues involved presented to the court as a proposed judgment.[10]

¶ 11 Although a consent judgment is not a judicial determination of the rights of the parties, it acquires the status of a judgment through the judge's approval of the pre-existing agreement of the parties.[11] A consent judgment is in the nature of a contract and construed the same as any other contract,[12] and we recognize the entry of a consent decree as an appropriate procedure for the adjudication of the settlement of a justiciable controversy.[13] In the divorce, the sexual abuse allegations were stipulated to by DHS, and the parents reached an agreement concerning visitation. The trial court was not at liberty to throw the divorce decree "out the window" because it was a consent decree.

¶ 12 Intervention in an action is controlled by 12 O.S. Supp.2003 § 2024.[14] Intervention is mandatory where a statute confers an unconditional right to intervene or where the intervener claims an interest in the matter and disposition of the action may, as a practical matter, impair or impede the ability to protect that interest.[15] Otherwise,

c. provide additional placement options and incentives that will achieve permanency and stability for many children who are otherwise at risk of foster care placement by the Department of Human Services because of abuse, abandonment, or neglect, but who may successfully be able to reside in the care of relatives within the third degree of relationship to the child, and
d. reserve the limited casework and supervisory resources of the Department of Human Services and the courts expended to care for children in state custody for those cases in which children do not have the option for safe, stable care within their immediate family.
B. The Department of Human Services shall establish and operate a relative support program pursuant to eligibility guidelines established in this section and by rules of the Department promulgated thereto which will divert children from the foster care program operated by the Department of Human Services. The relative support program shall provide assistance to relatives within the third degree of relationship to a child who are caring for the child on a full-time basis, regardless of whether there is a court order granting custody of the child to the relative.
C. Grandparents or other such relatives who qualify for and participate in the relative support program are not required to be certified as foster parents or to meet the foster care requirements but shall be capable of providing a physically safe environment and a stable, supportive home for the children under their care....

7. See discussion note 5, supra.

8. *Holleyman v. Holleyman*, 2003 OK 48, ¶ 11, 78 P.3d 921; *Whitehead v. Whitehead*, 1999 OK 91, ¶ 9, 995 P.2d 1098.

9. Title 12 O.S.2001 § 681 provides:
   A judgment is a final determination of the rights of the parties in an action.
   Title 12 O.S.2001 § 1116 provides:
   Every direction of a court or judge made or entered in writing, and not included in a judgment, is an order.

10. *Holleyman v. Holleyman*, see note 8, supra; *Whitehead v. Whitehead*, see note 8, supra.

11. *Whitehorse v. Johnson*, 2007 OK 11, ¶ 10, 156 P.3d 41.

12. *Holleyman v. Holleyman*, see note 8, supra; *Insurance Service Co. v. Finegan*, 1945 OK 352, ¶ 7, 165 P.2d 620; *Grayson v. Pure Oil Co.* 1941 OK 350, ¶ 22, 118 P.2d 644 [An agreed judgment is in the nature of a contract and is to be construed as other contract.].

13. *Whitehorse v. Johnson*, see note 11, supra; *In the Matter of the Estate of Faulkner*, 1972 OK 160, ¶ 18, 504 P.2d 875.

14. Title 12 O.S. Supp.2003 § 2024, see note 2, supra.

15. Title 12 O.S. Supp.2003 § 2024, see note 2, supra. *Nicholas v. Morgan*, 2002 OK 88, ¶ 20, 58 P.3d 775; *Tulsa Rock Co. v. Williams*, 1982 OK 10, ¶ 5, 640 P.2d 530.

intervention is within the discretion of the trial court.[16]

¶ 13 Title 10 O.S. Supp.2002 § 7003–7.1(C) provides persons who have legal custody of a child pursuant to an order of the court, the right to intervene in care and custody proceedings regarding the child.[17] It is undisputed that the aunt and uncle do not qualify for intervention under § 7003–7.1. This does not, however, end the inquiry. In our recent decision of *Saul v. Alcorn*, 2007 OK 90, 176 P.3d 346, the Court recognized that other circumstances may exist beyond those provided by § 7003–7.1 which may entitle a person to intervene in a child placement proceeding.

¶ 14 *Saul* involved a trial court's review of a DHS decision to remove a foster child from one foster home and place the child in another. Neither set of foster parents had kept the child for at least six months as required by 10 O.S. Supp.2002 § 7208.[18] The Court recognized that foster parents who are also persons *in loco parentis* have standing to intervene as a matter of right and assert their justiciable interest in an adoption proceeding, and that the right has been extended in other jurisdictions to custody proceedings as well. We held that the foster parents had been given statutory standing and due process rights which allowed full participation in the custody proceedings and when viewed collectively, these rights could not be divested by applying § 7208 to forego the foster parent's full participation in the custody proceedings. Section 7208 was not intended to divest the trial court of its duty to determine the child's best interest, especially considering the overall statutory scheme of stability, permanency, and foster parent input.

**16.** Permissive intervention is left to the sound legal discretion of the trial court based upon the nature of the controversy and the facts and circumstances of each case. Title 12 O.S. Supp. 2003 § 2024, see note 2, supra; *Tulsa Rock Co. v. Williams*, see note 15, supra. The trial court's determination regarding permissive intervention will not be reversed on appeal absent an abuse of that discretion. *Tulsa Rock Co. v. Williams*, see note 15, supra; *Deen v. Fruehauf Corp.* 1977 OK 27, ¶ 5, 562 P.2d 505.

**17.** Title 10 O.S. Supp.2002 § 7003–7.1(C), see note 1, supra.

**18.** Title 10 O.S. Supp.2002 § 7208 provides in pertinent part:
... B. If a child placed in the custody of a child-placing agency or in the custody of a state agency by the court has resided with a foster parent for three (3) or more months:
1. Except in an emergency, the state agency or child-placing agency shall:
a. give a minimum of five (5) judicial days' advance notice to the foster care family and to the court before removing a child from such family's care, and
b. at the time of such notification, provide the foster family with a written statement of the reasons for removing a child; and
2. The foster parent shall be entitled to submit to the court written reports or present testimony concerning the strengths, needs, behavior, important experiences, and relationships of the child, in addition to such other information the court may request.
C. When a child, under the jurisdiction of a court pursuant to the Oklahoma Children's Code, is placed in the custody of the Department of Human Services, or a child, under the jurisdiction of a court pursuant to the Juvenile Justice Code is placed in the custody of the Department of Juvenile Justice, or is placed in the custody of any child-placing agency, the state agency or child-placing agency shall have discretion to determine an appropriate foster placement for the child. Except as provided in this section, the state agency or child-placing agency may remove a child in its custody from a foster placement whenever the state agency or child-placing agency determines that removal is in the best interests of the deprived child, or the delinquent child or the child in need of supervision, consistent with the state's interest in the protection of the public.
D. 1. In order to promote stability for foster children and limit repeated movement of such children from one foster placement to another, the state agency or child-placing agency, except as otherwise provided by this subsection, shall not change the foster home placement of a child without the approval of the court in the following circumstances:
a. the child has been moved once since the last court hearing, as provided in Section 7003–5.4a of this title, or
b. a foster parent with whom the child has resided for more than six (6) months objects, in writing pursuant to the provisions of this subsection, after notice of the removal of the child by the state agency or the child-placing agency.
2. The objection shall be filed with the court by the foster parent and served on the state agency or child-placing agency within five (5) judicial days after receipt of the notice from the state agency or child-placing agency regarding removal of the child. The court shall provide for notice to other parties in the case. . . .

¶ 15 The rationale behind our decision in *Saul* is really quite simple. It began with the mandate that the trial court, when reviewing DHS decisions, determines whether DHS placement was in the child's best interest. Next, it recognized that built into the Oklahoma Children's Code,[19] and other statutes relating to children, is an overall statutory scheme of stability, permanency, and foster parent input concerning custody decisions. Finally, it recognized that for the trial court to make a proper determination of a child's best interest and to comply with the overall statutory scheme of stability, permanency, and foster parent input, foster parent participation was required under the facts of that case. We applied the same rationale in *Matter of Adoption of M.J.S.*, 2007 OK 44, ¶ 2, 162 P.3d 211, when we held that DHS's authority to consent to an adoption does not divest the trial court of its duty to determine a child's best interest,[20] and *State ex rel. Dept. of Human Services v. Colclazier*, 1997 OK 134, ¶ 9, 950 P.2d 824, *as corrected* (1997), *rehearing denied* (1998), when we held that the district court had a statutory duty to direct DHS to move a child from remote foster care to a home in nearer proximity to allow the mother an opportunity for reunification.[21]

¶ 16 In *Saul,* central to DHS's argument regarding its placement decision was that it was required to attempt to keep siblings together. Here, DHS has taken the opposite approach by separating the children and refusing to place them together with relatives who want them. Nevertheless, the children's aunt and uncle are seeking participation in the review of DHS's placement of the children. The rationale of *Saul* is even more applicable when family members are seeking participation.

¶ 17 Courts have a duty to guard with jealous care the interests of minors and to protect infants' rights.[22] The state also has an interest in a child's welfare and a responsibility to protect a child's interest.[23] Under the Oklahoma Children's Code, the paramount consideration in all proceedings concerning a child alleged or found to be deprived is the health, safety and best interest of the child.[24] The purposes of laws

---

19. Title 70 O.S.2001 § 7001–1.1 *et seq.*

20. The determination was supported by: 1) the expressed legislative purpose of the Oklahoma Adoption Code, 10 O.S.2001 § 7501–1.1 *et seq;* 2) the Legislature's directive that the court may enter a final decree of adoption if it is satisfied "that the adoption is in the child's best interests;" and 3) Oklahoma jurisprudence providing that the primary issue in adoption is the protection of the best interests of the child. *In the Matter of Adoption of M.J.S.*, 2007 OK 44, ¶ 2, 162 P.3d 211.

21. DHS's position is that the intent of 10 O.S. § 7003–7.1(B)(1) was to exclude its determination of the appropriateness of foster-care home placement of a child from the reach of the juvenile court. This position was inconsistent with a broad reading of the whole Oklahoma Children's Code. *State ex rel. Dept. of Human Services v. Colclazier*, 1997 OK 134, ¶ 9, 950 P.2d 824, *as corrected* (1997), *rehearing denied* (1998).

22. *Tanner v. Schultz*, 1924 OK 119, ¶ 0, 223 P. 174; *In re Hildebrand's Estate*, 1921 OK 128, ¶ 7, 197 P. 445; *In re. Sanders' Estate v. Sanders*, 1917 OK 468, ¶ 0, 168 P. 197; *Bolling v. Campbell*, 1912 OK 581, ¶ 0, 128 P. 1091.

23. Title 10 O.S.2001 § 7202 of the Oklahoma Foster Care and Out–of–Home Placement Act, provides in pertinent part:

... 2. The state has an interest in and a responsibility to children whose parents do not adequately provide proper care, supervision and protection for them. When circumstances within a family threaten a child's safety or welfare, or when such circumstances deprive a child of proper parental supervision, the state's interest in the child's welfare and in the protection of the public takes precedence over the natural right and authority of the parent; ...

24. Title 10 O.S.2001 § 7001–1.2 provides:
A. It is the intent of the Legislature that Chapter 70 of this title shall be liberally construed, to the end that its purpose may be carried out.
B. The paramount consideration in all proceedings concerning a child alleged or found to be deprived is the health and safety and the best interests of the child. The purpose of the laws relating to children alleged or found to be deprived is to:
1. Secure for each such child, the permanency, care and guidance as will best serve the spiritual, emotional, mental and physical health, safety and welfare of the child;
2. Provide expeditious and timely judicial and agency procedures which protect the health, safety and welfare of the child;
3. Preserve, unify and strengthen the child's family ties whenever possible in the child's best interests and for the health and safety of the child;

relating to deprived children are to secure the permanency, care, health, safety and welfare of children and to preserve family ties whenever possible.[25]

¶18 The Legislative goal of preserving family ties · whenever possible is evident throughout our statutes governing children.

> 4. Except as otherwise specified by the Oklahoma Children's Code, provide that reasonable efforts are made to prevent or eliminate the need for removing the child from the home, or to make it possible for the child to safely return to the family's home;
> 5. Recognize that the right to family integrity, preservation or reunification is limited by the right of children to be protected from abuse and neglect;
> 6. Remove the child from the custody of the parents of the child when the child's health, safety or welfare is in danger or the child's safety cannot be adequately safeguarded without removal;
> 7. Recognize that permanency is in the best interests of the child;
> 8. Ensure that, in the best interests of the child, when family rehabilitation and reunification are not possible or are determined not to be necessary pursuant to the Oklahoma Children's Code, the child will be expeditiously placed with an adoptive family or in another permanent living arrangement; and
> 9. Assure adequate and appropriate care and treatment for the child, with the use of the least restrictive method of treatment or placement consistent with the treatment or placement needs of the child.

**25.** Title 10 O.S.2001 § 7001–1.2, see note 24, supra.

**26.** Title 10 O.S. Supp.2007 § 5.

**27.** Title 10 O.S.2001 § 5A.

**28.** Title 10 O.S. Supp.2007 § 21.1, see note 3, supra.

**29.** Title 10 O.S.2001 § 21.3 provides:

> A. No person, other than an adult relative related to the child within the third degree, may accept the permanent care and custody of a child, except in accordance with a decree of a court of competent jurisdiction or the Oklahoma Children's Code, the Oklahoma Adoption Code, the Oklahoma Guardianship and Conservatorship Act or the Oklahoma Child Care Facilities Licensing Act.
> B. An adult relative related to a child within the third degree may accept the permanent care and custody of the child:
> 1. Pursuant to a written relinquishment by a parent or parents of a child acknowledged before a court of competent jurisdiction which identifies the child or children relinquished;

Grandparents are given visitation rights,[26] as are siblings.[27] Family members are given custodial preference over any other unrelated person (unless indicated by the wishes of a deceased parent);[28] and are the only persons who may accept permanent care and custody of a child, with limited exceptions.[29]

> 2. In accordance with the provisions of the Oklahoma Children's Code, the Oklahoma Guardianship and Conservatorship Act, Section 3 of this act or the Oklahoma Adoption Code; or
> 3. Without a court order and by operation of law, if the child has been abandoned by a parent or parents of a child in the physical custody of such relative pursuant to the provisions of this section.
> C. 1. A child who has been abandoned in the physical custody of such relative by a parent or parents of the child may not be reclaimed or recovered by the parent or parents who abandoned the child except through order of a court of competent jurisdiction or by release of the child by such relative.
> 2. Upon any action to determine custody of the child pursuant to the provisions of this subsection, the court shall base its findings and determination of custody on the best interests of the child and:
> a. the duration of the abandonment and integration of the child into the home of the relative,
> b. the preference of the child if the child is determined to be of sufficient maturity to express a preference,
> c. the mental and physical health of the child, and
> d. such other factors as are necessary in the particular circumstances.
> 3. During the pendency of any action to determine the custody of a child pursuant to this subsection, unless it is determined not to be in the best interests of the child, the child shall remain in the custody of the relative related to the child within the third degree.
> 4. If the court orders the child be returned to the parents of the child, the court may provide for a transitional period for the return in the best interests of the child.
> D. An adult relative related to the child within the third degree accepting permanent care and custody of a child pursuant to this section shall have the same authority as a parent to consent on behalf of a child or on behalf of a parent of the child in all cases except that such relative may not consent to an adoption of the child.
> E. The provisions of this section shall not apply to the acceptance of the permanent care and custody of a child by one parent of the child from the other parent of the child.
> *See also,* 10 O.S.2001 § 21.4 [relinquishment of permanent care and custody]; 10 O.S.2001 § 21.5 [transfer of child's custody to adult rela-

The Legislature recognizes that family relationships enhance family preservation and stability and that children who have been abused or neglected are best served when they can be cared for by grandparents or other suitable relatives instead of being placed into foster care.[30] The Legislature enacted the "Investing in Stronger Oklahoma Families Act" to enhance family preservation and stability.[31]

¶ 19 The Oklahoma Children's Code, 10 O.S.2001 § 7001–1.1 et seq., is to be liberally construed to carry out its purposes, which include unifying and strengthening family ties whenever possible in children's best interest and for the health and safety of children.[32] Under the Oklahoma Foster Care and Out–of–Home Placement Act, 10 O.S. 2001 § 7201 et seq., when a child is placed into foster care, the child is required to be placed with a relative when the safety and well-being of the child can be assured.[33] DHS is required to recruit relatives of children in their custody as foster parents.[34] Placement priority is only given to a non-custodial parent when such placement is in the child's best interest.[35]

■ ¶ 20 Here, two of the children were separated from a third child. Two of the children were placed with their biological, non-custodial father. The health and safety of the children has been called into question by responsible, adult relatives of the chil-

---

tive]; 10 O.S.2001 § 21.6 [authorization of medical care to minors].

**30.** Title 10 O.S.2001 § 22.1, see note 6, supra.

**31.** Title 10 O.S.2001 § 22.2 provides in pertinent part:

A. This section shall be known and may be cited as the "Investing in Stronger Oklahoma Families Act".
B. It is the intent of the Oklahoma Legislature in enacting the Investing in Stronger Oklahoma Families Act to provide assistance to guardians of children, adoptive parents and other "created families", to assist such guardians, adoptive parents and families to assume permanent custody of children in need of safe and permanent homes, and to enhance family preservation and the stability of these homes . . . .

**32.** Title 10 O.S.2001 § 7001–1.2, see note 24, supra.

**33.** Title 10 O.S.2001 § 7202, see note 38, infra; 10 O.S. Supp. § 2007 21.1, see note 3, supra [other circumstances in which a court may deny custody to a non-custodial parent include failure to contribute to the child's support, abandonment, termination of parental rights, conviction of certain crimes, among others].

**34.** Title 10 O.S.2001 § 7210 provides in pertinent part:

A. The Department of Human Services, the Department of Juvenile Justice, and each child-placing agency shall make special efforts to recruit foster placement for children in their custody from suitable relatives and kin of the child, and shall make diligent efforts to recruit foster and adoptive families that reflect the ethnic and racial diversity of children for whom foster and adoptive homes are needed. Provided, however, no person shall be denied the opportunity to become a foster or adoptive parent on the basis of the race, color, or national origin of the person, or of the child involved. No child shall be delayed or denied placement into foster care or adoption on the basis of the race, color, or national origin of the adoptive or foster parent, or of the child involved. . . .

**35.** Title 10 O.S.2001 § 7004–1.1 provides in pertinent part:

In addition to the other powers and duties prescribed by law, the Department of Human Services shall have the power and duty to:
1. Provide for the temporary care and treatment of children taken into protective or emergency custody pursuant to the provisions of Article III of the Oklahoma Children's Code, and placed in the Department's custody by an order of the juvenile court.
In providing for the temporary care and treatment of an alleged deprived child placed in the Department's custody, the Department shall:
a. place such children in a children's shelter, a foster home or a relative's home. In determining any placement for a child who has been removed from the custody of a custodial parent and placed with the Department in emergency or protective custody, priority shall be given by the Department to the placement of such child with the noncustodial parent of the child unless such placement is not in the best interests of the child. If it is determined by the Department that placement with the noncustodial parent is not in the best interests of the child, custody shall be consistent with the provisions of Section 21.1 of this title. If custody of the child cannot be made pursuant to the provisions of Section 21.1 of this title, the reason for such determination shall be specified in the agency records concerning the child. In addition, such reasons shall be made known to the court by the Department, . . .

dren.[36] The allegations are not, in this case, mere speculation or unsubstantiated, but are supported by a prior court decree which, on its face, restricts visitation of the biological father to times when his other child is not present, and by DHS's stipulation that the abuse did in fact occur. The trial court is required to make a determination as to whether it would be detrimental to the health or safety of the children for the non-custodial father to have custody.[37] It would not be possible, under these circumstances, for the trial court to make a proper best interest determination regarding the placement of these children without participation from the aunt and uncle.[38] Serving the best interests of children is a tripartite effort on the part of DHS, the trial court, and the family. It requires DHS, the trial court, and the family to work together to make the best determination possible for placement of the children possible, but the trial court will not and cannot serve as a rubber stamp of a DHS placement plan.[39]

¶ 21 By examining the Oklahoma Children's Code as a whole, and other statutes relating to children, as well as the mandates of the Legislature to both DHS and to the trial courts, it becomes clear that *at the very least,*. the aunt and uncle have a statutorily recognized interest in the proceeding such that due process requires that they be allowed to intervene. The trial court erred in not allowing the intervention under the facts of this cause. We realize of course, that a child's best interest is presumed to be served by placement with a natural parent, but that

**36.** Title 10 O.S. Supp.2006 § 7001–1.3 provides in pertinent part:

... 31. "Kinship relation" or "kinship relationship" means relatives, stepparents, or other responsible adults who have a bond or tie with a child and/or to whom has been ascribed a family relationship role with the child's parents or the child; ...

**37.** Title 10 O.S. Supp.2007 § 21.1, see note 2, supra.

**38.** 10 O.S.2001 § 7202 applies the best interest of the child standard for DHS placement and requires that DHS make reasonable attempts to place siblings together. The trial court is required to review placement decisions of siblings to determine whether the placement was in the child's best interest. It provides in pertinent part:

... 4. a. When a child is placed into foster care, the child shall be placed, when the safety and well-being of the child can be assured, with relatives, or other persons having a kinship relationship with the child, who are determined to be suitable, capable and willing to serve as caretakers for the child.

b. For a deprived child, a placement with suitable relatives or other persons having a kinship relationship with the child shall only be made when such placement is in the best interests of the child. For a delinquent child or a child in need of supervision, a placement with suitable relatives or other persons having a kinship relationship with the child shall only be made when such placement is in the best interests of the child and when such placement is consistent with the state's interest in the protection of the public....

12. When two or more children in foster care are siblings, every reasonable attempt should be made to place them in the same home. In making a permanent placement, such children should be placed in the same permanent home or, if the siblings are separated, should be allowed contact or visitation with other siblings; provided, however, the best interests of each sibling shall be the standard for determining whether they should be placed in the same foster placement or permanent placement, or allowed contact or visitation with other siblings....

Title 10 O.S.2001 § 7207 provides in pertinent part:

A. In determining placement of a deprived child in foster care:

1. The Department of Human Services or the court, if the court does not place the child with the Department of Human Services, and any child-placing agency shall be governed by the best interests of the child; and

2. Such child may express a preference as to placement. The Department of Human Services, the court, or the child-placing agency shall determine whether the best interests of the child will be served by the child's preference. The Department of Human Services, the court, or the child-placing agency shall not be bound by the child's preference. and may consider other facts in determining the placement.

B. In determining placement of a delinquent child or a child in need of supervision in foster care:

1. The Department of Juvenile Justice or the court, if the court does not place custody of the child with the Department of Juvenile Justice, and a child-placing agency shall be governed by the best interests of the child consistent with the state's interest in the protection of the public; and ...

**39.** *Saul v. Alcorn,* 2007 OK 90, ¶ 18, 176 P.3d 346; *Matter of Adoption of M.J.S.,* see note 20, supra at ¶ 17.

presumption may be overcome when a parent is unfit or when the child's welfare is in jeopardy.[40] Accordingly, the aunt and uncle must be allowed to intervene and the trial court is required to conduct a hearing in which they are allowed to participate.

## CONCLUSION

¶ 22 DHS's reliance on a recent amendment to 10 O.S. Supp.2007 § 7003–6.2 which provides that the trial court may not direct DHS to place a child in a specific home or placement is misplaced.[41] Whether a trial court can direct specific placement is irrelevant to the question of whether DHS's placement serves the child's best interest. Section 7003–6.2 does not usurp the trial court's duty in determining a child's best interest when reviewing DHS placement. Nor does it usurp the trial court's duty to reject a DHS placement if it is not in the child's best interest. If it did, the trial court would be nothing more than a rubber stamp.

¶ 23 The statutory framework concerning children clearly includes and requires attempts to involve family members and attempts to keep children together with family members. So much so, that family members, such as the aunt and uncle here, would be denied due process if they were not allowed to participate in this proceeding to protect their interest in the matter-an interest which has been statutorily recognized. A Writ of Mandamus is granted in part and the trial court is ordered to: 1) hold a hearing and allow the aunt and uncle to intervene to present evidence regarding whether the children's placement serves their best interests; and 2) to require DHS to show cause as to why it ignored the divorce decree and placed the children in direct contravention of it. A Writ of Prohibition is granted in part to prohibit the trial court from proceeding any further in the matter without allowing the aunt and uncle to participate.

**40.** *Matter of Guardianship of M.R.S.*, 1998 OK 38, ¶ 14, 960 P.2d 357.

**41.** Title 10 O.S. Supp.2007 § 7003–6.2 provides in pertinent part:
    ... C. 1. If the court determines it would be in the best interests of a child, the court may

**ORIGINAL JURISDICTION ASSUMED; WRITS GRANTED IN PART.**

EDMONDSON, V.C.J., HARGRAVE, KAUGER, WATT, TAYLOR, COLBERT, REIF, JJ., concur.

WINCHESTER, C.J., OPALA, J., concur in result.

place the child in the legal custody of the Department of Human Services. If the child is placed in the custody of the Department, the court may not direct the Department to place the child in a specific home or placement. ...