FILED
United States Court of Appeals
Tenth Circuit

December 9, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BRADLEY N. FROST, and
WAKON I. REDCORN, JR.,

Defendants-Appellants.

Nos. 09-5034, 09-5035
(D. Ct. Nos. 4:05-CR-00001-SPF-2, 4:08-
CV-00620-SPF-TLW and 4:05-CR-00001-
SPF-1, 4:08-CV-00636-SPF-FHM)
(N.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before **TACHA** and **GORSUCH,** Circuit Judges, and **STAMP**, Senior District Judge. [**]

---

Defendants-appellants Bradley N. Frost and Wakon I. Redcorn, Jr., were the

president and chief financial officer of Heritage National Insurance Company ("HNIC"),

a privately-owned insurance company providing coverage to companies in Oklahoma and

Texas. They were indicted in federal district court on charges of embezzlement and

misapplication from a health care benefit program and money laundering. A jury found

the defendants guilty on all counts, and each was sentenced to concurrent terms of 72

---

[*] This order and judgment is not binding precedent except under the doctrines of law
of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]The Honorable Frederick P. Stamp, Jr., Senior United States District Judge for the
Northern District of West Virginia sitting by designation.

months of imprisonment on every count. The defendants have now filed individual motions to vacate pursuant to 28 U.S.C. § 2255, arguing ineffective assistance of counsel on direct appeal when counsel failed to properly brief an issue. The district court denied each of the defendants' § 2255 motions. We take jurisdiction under 28 U.S.C. §§ 1291 and 2253(a) and AFFIRM.

## I. BACKGROUND

The underlying facts of this case are well known to this Court. See United States v. Redcorn, 528 F.3d 727 (10th Cir. 2008). HNIC provided life, accident, and group health insurance coverage to fully-insured companies and the individual members thereof. Investor Steven Silverstein and his wife owned half of the company, while Mr. Frost owned the other half. Two "third party administrators" were affiliated with HNIC, which contracted with HNIC to handle the processing of premiums and claims for HNIC's various fully-insured group health insurance plans. At all relevant times, Mr. Silverstein served as the chairman and Chief Executive Officer of all three affiliated companies. Mr. Frost was the president, and Mr. Redcorn acted as the secretary/treasurer and Chief Financial Officer.

The money that funded the operations of HNIC came from premium payments made by fully-insured groups and individuals having health care benefit insurance contracts with HNIC. The groups insured paid HNIC a premium, and HNIC, under its insurance policies, then provided financial reimbursement for medical services to either the insured employee or the medical provider of the benefit. Thus, the majority of

payments made by HNIC were paid directly to health care providers who provided medical services to HNIC policyholders.

Beginning in early 2000, Mr. Frost and Mr. Redcorn began removing money from HNIC for their own benefit. Each took approximately $500,000.00 from HNIC's incoming premium funds in April 2001. Mr. Frost took an additional $233,000.00 and Mr. Redcorn exacted an additional $405,000.00 from the bank accounts of HNIC and the third party administrators. Following an investigation by the Oklahoma Insurance Commission from which this information emerged, Mr. Frost and Mr. Redcorn were indicted on one count of health care fraud for taking money from a health insurance company in violation of 18 U.S.C. § 669, four counts of wire fraud in violation of 18 U.S.C. § 1343, and twenty-six counts of money laundering in violation of 18 U.S.C. § 1957(a).

The jury returned a verdict of guilty on all counts on December 16, 2005. Mr. Frost and Mr. Redcorn filed a timely appeal, raising four areas for argument: that the indictment was legally insufficient; that the evidence presented at trial was insufficient; that the defendants were entitled to a new trial because of newly discovered evidence; and that the defendants' sentences violated the Constitution. This Court denied the defendants' arguments regarding the indictment, newly discovered evidence, and their sentences. Regarding Mr. Frost's and Mr. Redcorn's insufficiency of the evidence claim, however, this Court denied this argument as to Count One, health care fraud, because the defendants failed to adequately address it in their opening appellate brief. In cutting

down the brief, counsel for the defendants apparently, and mistakenly, deleted this argument. Because the argument concerning Count One was deemed waived, this Court consequently determined that the evidence was sufficient on the money laundering charges.[1]

Mr. Frost and Mr. Redcorn filed motions to vacate pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel on appeal. They argue that had the insufficiency of the evidence claim been properly briefed as to Count One, they would have prevailed on direct appeal. The district court denied the § 2255 motions. The defendants filed timely motions for certificates of appealability, which the district court granted. Mr. Frost and Mr. Redcorn now appeal the denial of their § 2255 motions.

## II. DISCUSSION

On appeal, Mr. Frost and Mr. Redcorn argue that the district court erroneously determined that counsel was not deficient. Specifically, they argue that the evidence at trial was insufficient to establish that HNIC was a "health care benefit program" pursuant to 18 U.S.C. § 24(b), as alleged in Count One of the indictment, and that they received ineffective assistance of counsel by the omission of this allegedly meritorious claim.

"We review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error." United States v. Orange, 447 F.3d 792, 796 (10th Cir.

---

[1] The Court agreed with the defendants regarding the sufficiency of the evidence on the wire fraud counts and reversed the judgments of convictions as to these counts.

2006). "A claim for ineffective assistance of counsel presents a mixed question of fact and law, which we review de novo." Id.

To establish a successive claim for ineffective assistance of counsel, two elements must be met: (1) counsel's performance was deficient; and (2) this deficient performance prejudiced the defendants' defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). This Court can choose to first address either prong of the Strickland analysis. See Strickland, 466 U.S. at 697 ("The performance component need not be addressed first. If it is easier to dispose of an effectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") (internal quotations omitted); Romano v. Gibson, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This Court can affirm the denial of habeas relief on whichever Strickland prong is easier to resolve.").

To establish prejudice, the defendants must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693. "When, as here, the basis for the ineffective assistance claim is the failure to raise an issue, we must look to the merits of the omitted issue." Orange, 447 F.3d at 797. Counsel's failure to raise an omitted issue that is without merit is not prejudicial, and therefore, is not ineffective assistance. Id. Assuming, without deciding, that defendants' appellate counsel was deficient, Mr. Frost and Mr. Redcorn cannot establish prejudice because their argument that HNIC is not a "health care benefit program" under the applicable statute fails on the merits.

-5-

Thus, we turn to the merits of the defendant's insufficiency of the evidence argument. This Court reviews claims of insufficient evidence de novo. United States v. Banks, 451 F.3d 721, 725 (10th Cir. 2006). "[W]e ask only whether taking the evidence - both direct and circumstantial, together with the reasonable inferences to be drawn therefrom - in light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." Id. at 725-26 (citing United States v. Radcliff, 331 F.3d 1153, 1157 (10th Cir. 2003)).

Count One of the indictment charges the defendants with embezzlement in connection with health care and aiding and abetting in violation of 18 U.S.C. § 669. This statute forbids embezzlement of "the moneys, funds, securities, premiums, credits, property, or other assets of a health care benefit program." "Health care benefit program" is defined as follows:

> [T]he term "health care benefit program" means any public or private plan or contract, affecting commerce under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.

18 U.S.C. § 24(b). Mr. Frost and Mr. Redcorn argue that there was insufficient evidence to support the conclusion that HNIC fits within the statutory definition of health care benefit program. HNIC is an insurance company, they argue, and therefore it cannot be a "plan or contract" under 18 U.S.C. § 24(b).

"[I]t is our primary task in interpreting statutes to determine congressional intent, using traditional tools of statutory construction. In ascertaining such congressional intent,

we begin by examining the statute's plain language, and if the statutory language is clear, our analysis ordinarily ends." Coffey v. Freeport McMoran Copper & Gold, 581 F.3d 1240, 1245 (10th Cir. 2009) (citing Russell v. United States, 551 F.3d 1174, 1178 (10th Cir. 2008)). If the language of the statute is clear and unambiguous, the plain language of the statute controls. United States v. Quarrell, 310 F.3d 664, 669 (10th Cir. 2002). The defendants' argument that HNIC is not a health care program is undermined by the clear statutory language.

HNIC is a private insurance company that makes payments to providers for the cost of medical services. Although producing no precedents that are directly on point, our sister circuits have held that an insurance company that provides such medical payments qualifies as a health care benefit program. See United States v. Whited, 311 F.3d 259 (3d Cir. 2002) ("The [medical] Center is a local provider of chiropractic services and even [the defendant] concedes that payment is made for those services through Blue Cross, which is undisputably a health care benefit program."); United States v. Lucien, 347 F.3d 45 (2d Cir. 2003) ("[P]rivate insurers - bound by insurance contracts purchased by vehicle owners . . . - reimbursed various medical providers for fraudulently billed medical expenses . . . Because [the defendants] received a medical benefit as a result of the vehicle owners' no fault insurance contracts, a health care benefit program is, under the statutory definition of § 24(b) plainly implicated.") (emphasis included).

The defendants argue that these cases are inapposite and that HNIC is not a health care benefit program because it is not a "plan or contract." The district court, in denying

-7-

the defendants' § 2255 motions, found that HNIC held health care benefit insurance contracts with its fully-insured groups:

> There was evidence that money which funded the operations and claims payments by the third-party administrators which were affiliated with HNIC and which had contracts with HNIC, as well the money that funded HNIC, came from premium payments from fully-insured groups which had health care benefit insurance contracts with HNIC.

(Or. Denying § 2255 at 9, Mar. 4, 2009.) At oral argument, counsel did not dispute this finding, and in fact, conceded that this finding was both true and correct. Thus, in that HNIC held these contracts with participating companies, and thereafter made payments to medical providers for medical services actually provided to the individuals of these companies, 18 U.S.C. § 24(b) precisely encompasses such activity.

Finally, a panel of this Court has previously held, in dicta, that a private insurance company that pays providers for the cost of medical services is the private equivalent of Medicare or Medicaid, which it stated are undisputably health care programs under § 24(b). See Redcorn, 528 F.3d at 734. This Court is not bound by a prior panel's dicta. Bates v. Dep't of Corr., 81 F.3d 1008, 1011 (10th Cir. 1996). Nevertheless, this Court finds this dicta highly persuasive in deciding the issue currently before it. Several courts have held that the Medicare and Medicaid programs are both health care benefit programs as defined in 18 U.S.C. § 24(b). See e.g. United States v. McGovern, 329 F.3d 247, 248-49 (5th Cir. 2003) (collecting cases); United States v. Martinez, 2009 WL 4251064 (6th Cir. Dec. 1, 2009) (unpublished). HNIC, similar to Medicare and Medicaid, provides health insurance to individuals. As such, HNIC, too, is a health care benefit program.

Accordingly, the defendants' insufficiency of the evidence argument as to Count One must fail on its merits. Because the evidence is sufficient to support Count One of the conviction, the convictions on the money laundering counts must be upheld, as well.

As herein discussed, the merits of the defendants' insufficiency of the evidence as to Count One claim would have failed. No prejudice from counsel's failure to brief this issue therefore occurred. Consequently, the defendants have not satisfied the prejudice prong of Strickland, and the district court appropriately denied their § 2255 motions based on ineffective assistance of counsel.

## III. CONCLUSION

The district court did not err in denying the defendants' § 2255 motions. We therefore AFFIRM.

ENTERED FOR THE COURT,


Frederick P. Stamp, Jr.
Senior District Judge