2014 OK CIV APP 109

**Wakon Iron REDCORN, JR., and Eduvest, Inc., Plaintiffs/Appellants,**

v.

**Teresa L. KNOX, Defendant/Appellee.**

No. 110,279.

Court of Civil Appeals of Oklahoma, Division No. 2.

Jan. 31, 2014.

Rehearing Denied May 19, 2014.

Certiorari Denied Sept. 29, 2014.

James Alexander Drummond, Jim Drummond Law Firm, PLC, Norman, Oklahoma, for Plaintiffs/Appellants.

Rodney A. Edwards, Melissa Mailath, Edwards & Mailath, L.L.P., and R. Jack Freeman, Graham & Freeman, PLLC, Tulsa, Oklahoma, for Defendant/Appellee. ·

Stephen Jones, Jones, Otjen & Davis, Enid, Oklahoma, for Intervenor/Appellee.

P. THOMAS THORNBRUGH, Judge.

¶ 1 Plaintiffs/Appellants in this appeal from a consolidated action in the trial court are Wakon Redcorn (Redcorn) and Eduvest, Inc., an Oklahoma corporation (Eduvest), of which Redcorn is sole owner. They seek review of the trial court's decision granting a motion by Oklahoma's Insurance Commissioner as Receiver of Heritage National Insurance Company (Receiver) to substitute itself as the sole real party in interest entitled to prosecute and settle this action against Defendant, Teresa L. Knox.[1] For the reasons set forth below, we affirm.

## BACKGROUND

¶ 2 In 2006, Redcorn was convicted by a federal court jury of health care fraud, wire fraud, and money laundering,[2] for criminal acts committed while he was an owner and executive of Heritage National Insurance Company (HNIC). He was sentenced to prison, assessed criminal monetary penalties, and ordered by the federal district court to pay more than $1,765,000 in restitution to three payees, including $253,788.25 to Receiver.[3]

¶ 3 In 2007, Redcorn sued Knox in Tulsa County District Court Case No. CJ–2007–3642, claiming default on a $100,000 promissory note. In 2008, Eduvest sued Knox in

---

**1.** By order filed April 9, 2012, the Supreme Court determined that this is an appeal from a final decision of the trial court pursuant to 12 O.S.2011 994.

**2.** On appeal, the United States Court of Appeals for the Tenth Circuit affirmed as to all but the wire fraud conviction, and remanded for resentencing. *United States v. Redcorn*, 528 F.3d 727 (10th Cir.2008). On remand, the district court denied motions by Redcorn and his co-defendant, Bradley Frost, to vacate, set aside, or cor-

rect sentence; this decision also was affirmed on appeal, in *United States v. Frost*, 355 Fed.Appx. 230, 2009 WL 4642369 (10th Cir.2009), *cert. denied*, 562 U.S. 898, 131 S.Ct. 366, 178 L.Ed.2d 150 (Oct. 4, 2010).

**3.** The other payees and restitution amounts were $1,067,767.52 to the Oklahoma Life & Health Guaranty Association and $444,230.23 to the Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association.

Tulsa County District Court Case No. CJ–2008–0916, claiming breach of a contract by which Knox had promised to pay $200,000 in exchange for 49% of the outstanding shares of stock in Dental Directions, Inc., an Oklahoma corporation that Plaintiffs allege owns several private vocational schools and is worth millions of dollars. The latter suit sought money damages for Knox's alleged failure to pay for the stock, and both suits sought interest and attorney fees. Knox denied liability and asserted a number of defenses and counterclaims, including the defense that all transactions between the parties were void or voidable because they were based on a "criminal enterprise" conducted by Redcorn and proceeds illegally obtained by Redcorn. On Knox's motion, and over Plaintiffs' objection, the trial court consolidated the two cases in August 2008 under Case No. CJ–2007–3642.[4]

¶ 4 The federal criminal case against Redcorn was preceded by several years of investigation by federal authorities and the Oklahoma Insurance Commission (OIC). In 2002, OIC was appointed Receiver of HNIC in Oklahoma County District Court Case No. CJ–2002–1614, and sued Redcorn and Brad Frost, another HNIC principal, for wrongful conversion of HNIC funds. On July 10, 2009 (following Redcorn's conviction), Receiver and Redcorn entered into an "Agreed Journal Entry of Judgment" (Agreed Judgment) in the Oklahoma County case, by which Receiver took judgment against Redcorn for $325,000. The Agreed Judgment further provides that:

> 3.... Redcorn and Frost forever abandon, release and relinquish any and all rights, claims, defenses, causes of action and/or involvement in or related to Heritage National Insurance Company and these receivership proceedings ..., whether occurring or arising within Oklahoma County Case No. CJ–2002–1614, or otherwise. Redcorn and Frost and/or their counsel of record ... shall not file any further motions, pleadings, objections or other docu-

ments, and shall not make any further voluntary appearance, objection or argument related to these receivership proceedings, whether occurring or arising within Case No. CJ–2002–1614 or otherwise.

> 4.... Redcorn hereby fully and completely assigns/transfers any and all interests, rights, claims, defenses, causes of action and/or recoveries in the following litigation to the Receiver, for further prosecution by the Receiver:

> > *Wakon Redcorn, Plaintiff, vs. Theresa L. Knox, Defendant, Tulsa County Case No. CJ–2007–3642; and Eduvest, Inc., Plaintiff, vs. Teresa L. Knox, Defendant; Tulsa County Case No. CJ–2008–916 (Consolidated Under Case No. CJ–2007–3642).*

> Receiver has previously intervened in said case(s) and, by agreement of the parties and as stipulated in this Agreed Judgment, Redcorn agrees to fully assist the Receiver in the prosecution of the case(s), with any recovery going to satisfy approved claims asserted against the HNIC receivership estate. Any net recovery by the Receiver will be credited towards satisfaction of the Receiver's outstanding judgment against Redcorn as entered herein. If the net recovery exceeds the amount of the judgment and all interest and fees, any excess shall revert to Redcorn.

The Agreed Judgment was signed by both Redcorn and his counsel, as well as by the district judge assigned to the case.

¶ 5 As stated in the Agreed Judgment, prior to the Judgment Receiver had moved to intervene in Tulsa County Case No. 2007–3642, asserting rights to any proceeds recovered from Knox in Redcorn's promissory note claim. Following the 2009 Agreed Judgment, Receiver moved to substitute itself as "real party in interest" in the consolidated Tulsa County cases, citing its status as HNIC's receiver under the rehabilitation and liquidation provisions of the Oklahoma Insur-

---

4. See trial court appearance docket, July 25, 2008 entry, reflecting trial court minute order consolidating cases on court's own motion and instructing that "all pleadings are to be filed in CJ–2007–3642"; appearance docket, August 15, 2008 entry, reflecting clerk's note that a "transfer order" had been sent to the presiding judge's office for approval; and "Transfer Order" signed by presiding judge and filed August 22, 2008, at Record p. 1147.

ance Code, 36 O.S.1901 *et seq.*, and asserting, *inter alia,* that

— because Knox claimed the proceeds involved in Redcorn and Eduvest's transactions with Knox were "stolen HNIC assets" she recognized that Receiver "is the proper party to pursue these matters"; and

— Redcorn's assignment of his rights in both actions to Receiver entitled Receiver to pursue the contract claims in the consolidated case.

¶ 6 Plaintiffs initially objected to Receiver's motion. In August 2009, however, Plaintiffs joined with Receiver in Receiver's substitution motion in both cases, subject *only* to Plaintiffs' denial of Receiver's contention "that the source of the funds 'loaned to Defendant Knox were embezzled HNIC funds,'"[5] and that as such Plaintiffs should each remain as a party in interest. The *only reason* listed by Plaintiffs for their denial of Receiver's embezzling allegation was that Redcorn's criminal convictions were on appeal to the Tenth Circuit Court of Appeals, and that Plaintiffs anticipated reversal of same.[6]

¶ 7 In April 2010, the trial court entered an order leaving Redcorn and Eduvest in place as Plaintiffs but also designating Receiver as "a real party-in-interest Plaintiff" in both cases, with the court to address issues concerning "authority of counsel, discovery, procedure and other litigation issues" as they arose. Counsel for all parties approved the order.

¶ 8 Shortly thereafter, in July 2010 Eduvest moved on its own, in the consolidated case, to amend its petition to assert a plethora of additional theories of recovery against Knox, including a shareholder derivative action on behalf of DDI, fraud, breach of fiduciary duty, abuse of process, perjury, an accounting, declaratory judgment, injunction, and actual and punitive damages. Attached

to the proposed amended petition were numerous exhibits, which included, *inter alia,* a "Stock Purchase Agreement" dated March 15, 2000, whereby Eduvest purchased "100 percent of the capital stock of DDI" for $250,000, signed by Redcorn as Eduvest's president; a January 2001 "Stock Purchase Agreement Addendum," which Redcorn characterized as a "fake," by which the sale to Eduvest purportedly was "amended" to sell only 49% of DDI stock; and a corporate minute that identifies Redcorn as a DDI director and company president. Knox objected to the motion.

¶ 9 The trial court denied the request for leave to amend. Eduvest and Redcorn then filed a new, separate district court action (Tulsa County Case No. CJ–2010–6731) against Knox, and sought to consolidate the new action with consolidated Case 2007–3642. Although Receiver had not objected to Eduvest's motion for leave to amend its petition, it joined Knox in objecting to consolidation. Specifically, Receiver argued it agreed with Knox that the claims raised in the new case were barred by limitations, laches, waiver, estoppel, and "other legal impediments," and that Plaintiffs were simply trying to delay implementation of a settlement which Receiver had reached with Knox. The trial court denied Plaintiffs' consolidation request.

¶ 10 In April 2011, Receiver moved for a determination that Receiver was the "sole real party in interest Plaintiff" in the consolidated litigation with the right to settle the cases. Receiver alleged it had entered into an "arms length negotiated settlement" with Knox for less than $325,000, and that the settlement "fairly represent[s] the value of the claims in this consolidated action, and a fair resolution of the action." Plaintiffs filed an objection, and over the next few months (while Receiver's motion was pending) filed multiple additional motions or objections with attached evidence.[7]

---

5. See "Revision and Partial Withdrawal ..." of Plaintiffs' objections, filed August 24, 2009, in the consolidated case. Record at 277.

6. As noted at footnote 2, that appeal was unsuccessful, with the United States Supreme Court ultimately denying certiorari in October 2010. *See United States v. Frost,* 355 Fed.Appx. 230

(10th Cir.2009), *cert. denied* 562 U.S. 898, 131 S.Ct. 366, 178 L.Ed.2d 150 (2010).

7. These included the previously mentioned motion to consolidate Eduvest's 2010 action; a motion to recuse Knox's counsel based on alleged conflict of interest by simultaneously representing Eduvest and Knox; a motion to file an

¶ 11 In December 2011 the trial court entered a lengthy minute order granting Receiver's motion. The order also made findings that confirmed the OIC's appointment and status as Receiver of HNIC under Oklahoma's insurance statutes; Redcorn's conviction of health care fraud under federal law; and the 2009 Agreed Judgment for $325,000 entered in Oklahoma County Case No. CJ–2002–1614. The court's minute also specifically found:

14. The Receiver and the Defendant have entered into a Settlement Agreement for the full and complete compromise of the consolidated cases. The amount of the settlement consideration to be paid by the Defendant is less than the Receiver's $325,000.00 judgment.... In the present case, the Receiver is the real party in interest both (a) as assignee via the assignment of claims in the Agreed Judgment, as well as [b] the Receiver's status as $325,000.00 judgment creditor against Redcorn. The Agreed Judgment is a final non-appealable judgment which clearly establishes the Receiver as the party legally entitled to receive the proceeds of these claims. The settlement, as well as the maximum amounts at issue—$300,000.00, clearly establish that Redcorn and/or Eduvest's contingent right to recover any sum paid over and above $325,000.00 will not and cannot occur. The Receiver is therefore recognized by order of this Court declaring and recognizing the Receiver as the sole real party in interest Plaintiff with the full right and authority to finally and fully settle, compromise, dismiss and release the consolidated litigation. As a result of this Court's findings, subsequent filings by Plaintiff Redcorn/Eduvest are considered moot. Pending motion to dismiss counsel is denied.

amended petition against Knox "under seal"; motions for findings of fact and conclusions of law with respect to the consolidated cases; requests for evidentiary hearings; and motions for summary judgment against Knox along with "concise statements of fact" as to each Plaintiff. Eduvest claimed ownership of DDI stock due to a "total failure of consideration" to support the Stock Purchase Agreement. Eduvest also alleged that its breach of contract claim against Knox in Case 2008–0916 was worth "well over $500,000," while "the stock at issue in the June

¶ 12 In February 2012, the court entered an order incorporating the December 2011 minute, granting Receiver's motion, and deeming Receiver the "sole party in interest" entitled to prosecute and settle the cases.[8] Plaintiffs appeal.

## STANDARD OF REVIEW

¶ 13 The proper standard of review depends on the matter at issue. · *See Patel v. OMH Medical Center, Inc.,* 1999 OK 33, ¶ 17, 987 P.2d 1185, 1192 ("procedural imbroglio" complicates decision as to proper standard of review). Issues of law—such as questions of jurisdiction, statutory construction, the proper legal procedure for a particular controversy, or orders deciding undisputed facts—are reviewed *de novo. See Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.,* 1996 OK 125, ¶ 5, n. 1, 932 P.2d 1100, 1103; and *Christian v. Gray,* 2003 OK 10, 40, 65 P.3d 591, 608. In contrast, a trial court's adjudication of a fact issue is reviewed according to the type of controversy and type of adjudication made, while matters considered discretionary with the trial court are reviewed for abuse of discretion, which may also involve deciding an issue of law. *See Christian* at 41–45, 65 P.3d at 608–09. Non-substantive matters related to the manner in which a case shall be conducted are considered discretionary; thus, an abuse of discretion standard applies. *See Savoy Oil Co. v. Emery,* 1928 OK 572, ¶ 0, 21, 277 P. 1029, 1030, 1034.

## ANALYSIS

¶ 14 Plaintiffs list more than 26 propositions of error on appeal, and purport to support them by repetitive arguments that obscure rather than clarify the issues. Despite Plaintiffs' "scattergun" writing style,

8, 2001 [Stock Purchase Agreement] is worth many millions." Record at 1067.

8. In March 2012, the district court entered another order certifying the February 2012 order for immediate appeal. The Supreme Court thereafter found that this order was the "functional equivalent" of a determination and direction pursuant to 12 O.S.2011 994. *See* Order of the Supreme Court filed April 9, 2012.

however, two essential facts remain clear. First, it is clear, as discussed more fully below, that Plaintiffs' claims against Knox were assigned to Receiver. The assignment was incorporated in the Agreed Judgment of the Oklahoma County District Court, and that judgment was not appealed. As such, the Agreed Judgment cannot be challenged, or 'collaterally attacked,' in this appeal on any ground other than that appearing on the face of the judgment roll of the Oklahoma County proceeding.[9] The only part of the judgment roll from the Oklahoma County proceeding that was incorporated into the record here is the Agreed Judgment itself, and Plaintiffs' challenges to its validity are discussed in Part II(d).

¶ 15 Second, it is clear on the record that is presented, that all of the funds flowing from Redcorn or Eduvest—whether in Redcorn's 2001 alleged loan to Knox or Eduvest's 2000 alleged purchase of DDI stock—were monies embezzled by Redcorn from HNIC. Though Plaintiffs attempt to argue their way around this essential fact in 100–plus pages of briefs on appeal, the fact was admitted when Plaintiffs joined in Receiver's 2009 substitution request limited only by their denial that the funds were part of a criminal enterprise. Plaintiffs' limited denial was based solely on preserving Redcorn's allegation of innocence pending appeal in his federal criminal trial— an appeal that the United States Supreme Court refused to consider in October 2010. *See United States v. Frost*, 562 U.S. 898, 131 S.Ct. 366, 178 L.Ed.2d 150 (2010). Consequently, it is clear that Redcorn and Eduvest's *only* reserved objection to Receiver's original motion to be substituted as Plaintiff no longer exists.

¶ 16 Even so, Plaintiffs raise numerous propositions of error challenging the district court's jurisdiction; the Receiver's authority; legal determinations by the trial court concerning the parties' agreement; Plaintiffs' assignment of claims to Receiver; and the

need for an evidentiary hearing under the circumstances presented. We address these objections below to the extent the legal correctness of the decision to substitute Receiver as sole Plaintiff in the case is implicated.

## I. Complaints Based On Alleged Jurisdictional Defects

### (a) Consolidation Challenge

¶ 17 Title 12 O.S.2011 2018(C) provides for consolidation of pending actions "involving a common question of law or fact." Consolidation "is a procedural mechanism to enhance the efficiency of judicial process and its economy," and is a matter as to which a trial court has "broad discretion." *State v. One Thousand Two Hundred Sixty–Seven Dollars*, 2006 OK 15, 15, 131 P.3d 116, 122.

¶ 18 Plaintiffs argue the Tulsa County cases were not properly consolidated in the court below, and cite technical deficits in the record leading to consolidation. Plaintiffs also argue the two cases concern different factual and legal issues, and that treatment of the cases together rendered various filings and court actions *"coram non judice"* and void.

¶ 19 The argument is invalid. Not only did Plaintiffs repeatedly recognize the trial court's consolidation of Cases 2007–3646 and 2008–0916, but they also moved to consolidate a third case with those cases in a motion that specifically argued and recognized that common facts and legal issues existed in the cases. As such, they have waived any objection to the procedure used. *See, e.g., In re Reid's Estate*, 1956 OK 64, ¶ 12, 294 P.2d 544, 547; 4 C.J.S. *Appeal and Error* 274 (Database updated Dec. 2013). Furthermore, consolidation is supported by the record. The cases involve two transactions involving the same individuals and a common core of alleged facts and law. The Agreed Judgment on its face unequivocally assigns all interests and rights in both cases to Receiver. On the

**9.** *See Fent v. Okla. Natural Gas Co.*, 1994 OK 108, ¶ 8–12, 898 P.2d 126, 131–33; *Union Oil Co. of Cal. v. Bd. of Equalization*, 1996 OK 40, ¶ 14, 913 P.2d 1330, 1334 (appeals court's examination of a collateral attack on an unappealed judgment is limited to the judgment roll as it appears in the appellate record); *see also Kellen-*

*berger v. Guar. Loan and Inv. Corp. of Tulsa*, 1974 OK CIV APP 23, ¶ 7–12, 530 P.2d 574 (consent judgment is entitled to res judicata or collateral estoppel effect); *Bank of Picher v. Harris*, 1924 OK 690, ¶ 2, 229 P. 137, 139 (unappealed agreed judgment not subject to collateral attack in later proceeding).

record presented, we find the trial court did not abuse its discretion in consolidating the cases.

### (b) Receiver's Intervention and Entries of Appearance

¶ 20 Plaintiffs next argue the trial court never entered a formal order granting Receiver's motion to intervene in either lawsuit. They contend Receiver's entries of appearance in the suits therefore are void (*"coram non judice"*) and Receiver has no authority to appear before the court as a party. Presuming, without agreeing, that Plaintiffs' allegations are true, we find the argument is irrelevant inasmuch as Plaintiffs ultimately *joined in Receiver's request for substitution,* as memorialized in the trial court's April 2010 order. Plaintiffs have waived any right to complain as to the manner in which Receiver entered this case. *See Halliburton v. Illinois Life Ins. Co.,* 1935 OK 36, 40 P.2d 1086 (syl.1).

¶ 21 Plaintiffs also complain that current Insurance Commissioner John Doak's appearance is not valid because he failed to file a formal notice of substitution upon taking office in January 2011. Plaintiffs do not allege they were prejudiced by this alleged error. They also do not cite authority to support their claim that Doak was required to formally move for substitution before appearing in the case, and we are aware of none. In fact, pursuant to 12 O.S.2011 2025(D)(1), a public officer who is a party to a case in his or her official capacity is automatically substituted by his or her successor in office. "An order of substitution may be entered at any time, *but the omission to enter such an order shall not affect the substitution." Id.* (Emphasis added). The statute's applicability to the situation here is clear. We reject Plaintiffs' argument on these issues.

### (c) Receiver Status

¶ 22 Plaintiffs also question Receiver's authority to appear in the Tulsa cases because Receiver did not file an order from the Oklahoma County case showing its appointment as Receiver. Plaintiffs did not raise this issue or deny Receiver's authority in the trial court, however, and they do not deny that Receiver is in fact HNIC's receiver. We further note that Receiver's status previously was recognized by this Court in *State ex rel. Holland v. Heritage National Insurance Co.,* 2008 OK CIV APP 50, 184 P.3d 1093.

¶ 23 Plaintiffs also argue that Receiver lacks authority and is *"coram non judice"* because Receiver was appointed pursuant to Oklahoma insurance statutes regulating domestic insurance companies, and Redcorn was convicted under federal criminal statutes that deemed HNIC a health care benefit "plan or contract" under federal law. The point of this argument apparently is to redefine HNIC's status under Oklahoma law and thereby challenge the basis for Receiver's status as HNIC's receiver. Plaintiffs did not raise this argument until late in the case, and they do not deny that HNIC was subject to OIC regulation while it operated in Oklahoma. Plaintiffs cite no relevant authority to support the argument, which essentially amounts to an improper collateral attack on the order appointing OIC as HNIC's receiver in the Oklahoma City litigation. In the absence of relevant precedential authority and a cogent argument, we reject Plaintiffs' contentions on these issues. We reiterate that Plaintiffs have waived any objection to the manner in which Receiver entered this case, including any objection as to Receiver's authority to proceed as HNIC receiver in this litigation.

### (d) Alleged Lack of Compliance with 12 O.S.2011 994 and 1031 *et seq.*

¶ 24 In two poorly explained propositions, Plaintiffs appear to contend that the February 2012 order *from which they filed this appeal* and two orders preceding that order (which Plaintiffs call the "three Doak orders") should be declared void because the orders did not resolve all claims as to all parties, and did not "expressly terminate" the action on appeal. Plaintiffs also question the validity of "the last two orders" pursuant to what they call the "doctrine" of *Aishman v. Taylor,* 1973 OK 130, 516 P.2d 244.

¶ 25 Normally, an *appellee* would argue that a case is not ripe for appeal and should be dismissed. Why Plaintiffs insert it at this

juncture is not clear, particularly since they specifically obtained the February 2012 final order at the direction of the Supreme Court, which then allowed the matter to proceed on appeal. For this reason alone, Plaintiffs' argument is specious.

¶ 26 Their reliance on *Aishman* also is misplaced. *Aishman* held that a trial court's entry of a second default judgment was void and did not automatically vacate the court's prior entry of a voidable default judgment. The Court held the voidable judgment could be vacated only by complying with the vacation procedures of Title 12, at 1031, *et seq.* Here, the record and appearance docket clearly reflect that the trial court vacated its premature, May 2, 2011 judgment as allowed under 1031.1, and that the court's December 2011 minute and February 2012 order are neither void nor voidable pursuant to *Aishman.*[10]

¶ 27 Accordingly, we reject all of Plaintiffs' arguments seeking to invalidate the trial court's actions on grounds challenging the court's jurisdiction over, or authority to adjudicate, this matter. The trial court's judgment will not be disturbed on any of these alleged grounds.

## II. Complaints Based on Trial Court's Legal Determinations

¶ 28 Plaintiffs next assert errors in legal decisions related to the interpretation and effect of the Agreed Judgment on Plaintiffs' claims in the consolidated cases, as well as to other questions of law presented to the trial court. These include issues related to: whether the trial court followed the correct statutory procedure; whether the Agreed Judgment should be treated as a contract or a judgment; whether Redcorn and Eduvest have not properly been recognized as being "separate and distinct" from one another; and whether as a consequence Eduvest can be bound by the Agreed Judgment as a matter of law.

### (a) Applicable Statutory Procedure

¶ 29 The parties and trial court treated this action as being governed by 12 O.S.2011 2017, which requires that an action be prosecuted in the name of the real party in interest. Plaintiffs contend on appeal that the trial court "misapplied" 2017, arguing that the statute was intended to apply only to situations when the wrong party was initially named in a case by mistake, and only when substitution is required to "prevent injustice." We disagree with Plaintiffs that 2017 should only be employed to correct inadvertent mistakes in naming parties in the initial lawsuit. However, while the question of which party is the "real party in interest" clearly remains relevant to this case, we find that 2025(C)—which has not been cited by either party—applies here as a matter of law. Pursuant to 2025(C):

> In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party....

¶ 30 Though we find no Oklahoma Supreme Court case directly on point, federal cases interpreting Fed.R.Civ.P. 25(c), on which 2025 is based, have construed the rule as "speak[ing] to the situation in which an interest is transferred *during the pendency of an action.*" 7C Wright & Miller, *Federal Practice and Procedure* 1958 (3d ed. Database updated April 2013). It is undisputed that such a transfer of Plaintiffs' interest is precisely what occurred in this case.

¶ 31 Neither state, federal, nor local district court rules provide a method the parties should follow to determine when a substitution motion should be granted. "This gap in Rule 25(c) most likely stems from the fact that the rule does not easily lend itself to contested motions practice," and the rule's

---

**10.** On May 17, 2011, the trial court *vacated*, on its own motion, a May 2, 2011 order that prematurely granted Receiver's motion to substitute itself as sole real party in interest. The court then entered its lengthy December 2011 minute order, followed by its final order in February 2012 effectively terminating the action as to

Plaintiffs. The court's vacation of the May 2, 2011 order pursuant to its term-time authority under 12 O.S.2011 1031.1 is consistent with *Aishman.* Plaintiffs' failure to mention the May 17, 2011, vacation order in their brief is inexplicable in the context of this argument.

drafters likely did not "anticipate[ ] the need to instruct courts on how to decide Rule 25(c) motions in cases in which the parties dispute" whether substitution should occur. *Luxliner PL Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 72 (3d Cir.1993).

¶ 32 The Court in *Luxliner* emphasized that, generally, a court assessing a motion to substitute should focus on whether substitution would "facilitate the conduct of a case." *Id.* at 71–72. An exception would arise if evidence is presented that implicates the parties' substantive rights. In the latter case, the court should apply an analysis similar to that afforded a summary judgment motion and determine whether the evidence shows there is a genuine issue as to any material fact. If not, the substitution motion should be granted as a matter of law; and if so, then the case should be returned to district court for an evidentiary hearing. *Id.* at 72–73.[11]

¶ 33 We find the Court's rationale in *Luxliner* persuasive, and that 12 O.S.2011 2025(C) applies to the situation presented herein. As discussed below, we further find that there are no genuine issues of disputed fact, and that the evidence demonstrates Receiver is entitled to be substituted as sole Plaintiff in interest here as a matter of law.

(b) **Agreed Judgment as a Contract; Interpretation as Contract; Unambiguous Provisions**

■ ¶ 34 Plaintiffs argue, and we agree, that an agreed judgment is in the nature of a contract. *Skrapka v. Bonner*, 2008 OK 30, 187 P.3d 202. Such a judgment is "the result of negotiations between the parties and the subsequent settlement of the issues involved presented to the court as a proposed judgment," and is to be "construed the same as any other contract." *Id.* at ¶ 10, 11, 187 P.3d at 208. Oklahoma law also holds that a contract is to be construed so as to give effect to the intention of the parties, and that unambiguous language in a written contract

is the clearest expression of that intent. *See* 15 O.S.2011 152 through 154.

¶ 35 Here, the Agreed Judgment is clear and unambiguous in its intent to make a present assignment of the rights of both Plaintiffs to Receiver. We reject Plaintiffs' argument that Eduvest is not bound by the Agreed Judgment, as discussed below.

(c) **Redcorn and Eduvest as "Separate Entities"**

■ ¶ 36 Plaintiffs argue the Agreed Judgment cannot be valid as to Eduvest because Eduvest is a separate entity from Redcorn, and Eduvest was not a party to or represented by counsel in the 2002 lawsuit. Citing *Massongill v. McDevitt*, 1989 OK CIV APP 82, 828 P.2d 438, and *Allen v. City of Chickasha*, 2009 OK CIV APP 52, 211 P.3d 241, they claim Redcorn's signature on behalf of Eduvest on the court document does not bind Eduvest because Redcorn is not an attorney.

¶ 37 As Receiver points out, Plaintiffs did not raise this argument in the trial court and therefore have not preserved it as an issue for appellate review. *See, e.g., Enochs v. Martin Properties, Inc.*, 1997 OK 132, 954 P.2d 124 (validity of testimony by unrepresented corporate representative, whose status was not challenged in lower tribunal, cannot be questioned for first time on appeal). *Massongill* and *Allen* do not hold otherwise, and are further distinguishable because those cases dealt primarily with a court's prerogative to strike pleadings filed and actions taken by a nonlawyer corporate officer. That situation is not present here, and those cases do not apply.

¶ 38 Even if Plaintiffs had preserved this issue, however, their argument is wrong. While it is undisputed that Eduvest was neither a party to nor represented by counsel in the 2002 litigation, it is also undisputed that Redcorn is the sole shareholder of Eduvest,

---

11. *See also Abbott Laboratories v. Roxane Laboratories, Inc.*, 2013 WL 2322770, *4 (D.Del.2013) (quoting 6 *Moore's Federal Practice* 25.34[3](3d ed.2011)), where the court stated:

In examining a Rule 25(c) motion, the court must first analyze "the respective rights and liabilities among the parties and the transferee under the substantive law governing the case," and then must determine "whether it would best facilitate the conduct of the case to have the transferor remain in the case, substitute the transferee, or join the transferee and continue with both as parties."

that Redcorn *was* represented in all aspects of the litigation, and that Redcorn signed the Agreed Judgment assigning all rights and interests in the' Tulsa County lawsuits to Receiver. In the court below, Redcorn consistently was represented to be the sole interest holder in Eduvest and the sole beneficiary of any recovery to which Eduvest was entitled in the lawsuits. Oklahoma recognizes that, even though a corporation and its sole shareholder are separate legal entities, the "the trend of authority is to uphold as binding on the corporation acts or contracts on its behalf by a person or persons owning all or practically all the stock." *Henry Bldg. Co. v. Cowman,* 1961 OK 75, ¶ 16, 363 P.2d 208, 212 (quoting 19 C.J.S. *Corporations* ). Generally, shareholders who participate in and assent to corporate acts will be estopped from complaining subsequently of such acts. *Fletcher Cyclopedia of the Law of Corporations* 2099 (Database updated Sept. 2013). As the sole corporate shareholder and officer of Eduvest, Redcorn's implication that he was unauthorized to act for and on behalf of Eduvest, and that Eduvest is not bound by the Agreed Judgment, is disingenuous at best.

¶ 39 While Redcorn as a nonlawyer may not have been *entitled* to litigate on behalf of his corporation in court, as its sole shareholder and principal he cannot, as a matter of law, *now* attempt to reclaim a right he unambiguously failed to preserve on behalf of the corporation several years ago. He cannot "undo" what has already been done—and what he has consistently (until recently) agreed was done—simply because it serves his interests at this point in the litigation. Thus, neither he nor Eduvest can now deny that Eduvest is bound by the unambiguous terms of the Agreed Judgment, by which Redcorn on behalf of Eduvest assigned Eduvest's entire interest in Tulsa County Case No. 2008–0916 to Receiver.

12. Redcorn Brief in Chief at 18–19.

13. *See* discussion above accompanying footnote 9.

14. We reject out of hand the argument that the Agreed Judgment imposed a duty on Receiver to

**(d) Agreed Judgment as "Void" Due ·to Unconstitutionality; for Assigning Rights Not Arising from Contract; and Due to "Irreconcilable Conflicts of Interest" by Receiver in Failing to Maximize Redcorn's Recovery**

¶ 40 We further reject Plaintiffs' contention that the "assignment" of their rights under the Agreed Judgment is "void," (1) because it allegedly violates Oklahoma statutory and constitutional provisions regarding restrictions on access to courts, (2) because Receiver has allegedly "breached" its duty to "faithfully prosecute Redcorn's claims and further his coarse [sic] of litigation" [12] by proposing to enter into a settlement with Knox and for other reasons, and (3) because 12 O.S.2011 2017(D) prohibits "the assignment of claims not arising out of contract."

¶ 41 Plaintiffs' arguments on these contentions are largely incomprehensible and make little, if any, sense. Although Plaintiffs' arguments purport to avoid the rule against collateral attacks on final unappealed judgments,[13] none are supported by citation to relevant authority or relevant material in the record. The first two contentions were not argued before the trial court in opposition to Receivers' motion to substitute and, for this reason alone, are not properly before this Court on appeal. *See Northwest Datsun v. Okla. Motor Veh. Comm'n,* 1987 OK 31, ¶ 16, · 736 P.2d 516, 520.[14]

¶ 42 Plaintiffs' remaining contention—regarding assignments of claims not arising out of contract—though argued in the trial court, fails to identify what "claims" assigned in the Agreed Judgment do not arise out of contract. In fact, both petitions in the consolidated cases are based on contractual agreements. Although Redcorn and Eduvest have each attempted to expand the remedies and damages potentially available in the 2008 case, the additional allegations they have attempted to assert relate to the same transac-

maximize recovery in the lawsuits for the benefit of Redcorn. As suggested in Part III of this opinion, the only duties that might have resulted from the assignment, as concerns Receiver, were duties owed by Plaintiffs under the terms of the contracts being sued upon.

tion involving the sale of stock by Eduvest to Knox.

¶ 43 Oklahoma has long recognized that a claim for damages arising from breach of contract for the sale of stock is assignable. *See e.g., Stringer v. Kessler*, 1916 OK 273, 155 P. 867. Also well settled is "the rule that an assignor cannot as against his assignee allege [the] nonassignability" of that which was assigned, "for a more perfect illustration of the necessity for the doctrine of estoppel could hardly be stated." *Harris v. Tipton*, 1939 OK 256, ¶ 17, 90 P.2d 932, 935. Here, the claims asserted by Plaintiffs in both the 2007 and 2008 cases clearly concern and relate solely to rights arising out of contracts, were assignable, and were assigned by Plaintiffs pursuant to the Agreed Judgment. Their argument otherwise now is erroneous.

**(e) Argument that Redcorn is Entitled to Remain in Suit as Alleged "Holder" of Knox Promissory Note**

¶ 44 Redcorn further argues the Receiver cannot be substituted as a real party in interest as to the 2007 case because Redcorn is the "holder" of Knox's original note and is therefore entitled to enforce it pursuant to 12A O.S.2011 3–301. Treating this alleged fact as undisputed for purposes of this analysis, we find it irrelevant to a determination of whether Redcorn is a "real party in interest" to this case. Clearly, Redcorn assigned his rights to enforce the note to Receiver. As such, he is estopped as a matter of law from now claiming a continued right, in opposition to Receiver, to enforce the note. His claim of legal error on this ground therefore is rejected.[15]

---

15. We are not unmindful of the Oklahoma Supreme Court's slate of decisions, beginning in 2012, concerning enforcement of assigned promissory notes in mortgage foreclosure proceedings. *See e.g., Wells Fargo Bank, N.A. v. Heath*, 2012 OK 54, 280 P.3d 328; *Deutsche Bank Nat. Trust Co. v. Byrams*, 2012 OK 4, 275 P.3d 129; *HSBC Bank USA, Nat. Ass'n v. Lyon*, 2012 OK 10, 276 P.3d 1002. Pursuant to our explanation above, however, we do not find those cases applicable to Receiver's substitution motion here. We also find the situation here distinguishable because Redcorn clearly assigned his right of enforcement on the note to Receiver, and thus is estopped to deny the assignment now.

---

**III. Complaints as to Factual Findings and Substitution of Receiver as Real Party in Interest Plaintiff Without an Evidentiary Hearing**

¶ 45 The final group of errors alleged by Plaintiffs concern the trial court's factual findings in support of its dismissal of Plaintiffs from the case. The findings concerned the court's determination, without a separate evidentiary hearing, that the value of Plaintiffs' claims were such that Plaintiffs' "contingent right to recover any sum paid over and above $325,000 [i.e., the amount of Receiver's judgment] will not and cannot occur."

¶ 46 The language of the trial court's order reflects the court's reasoning based on its apparent presumption that Plaintiffs retained a viable contingent claim and right to participate in the litigation against Knox, but that the facts of the case were such that the contingency had no possibility of occurring. While we agree with the court's ultimate conclusion excluding Plaintiffs from remaining in the case, we disagree that factual findings concerning the potential value of the case were necessary to its decision.

¶ 47 As we have stated above, the Agreed Judgment on its face makes a clear and unequivocal assignment to Receiver of all of Redcorn's "interests, rights, claims, defenses, causes of action and/or recoveries" in the Tulsa County actions.[16] Oklahoma law has long held that, upon the assignment of a claim, "the right of action is conferred upon the assignee" and the assignee "acquire[s] as against the debtor all rights to which the assignor was entitled at the time of the assignment," leaving no interest in the action in

---

16. We determine the intentions of the parties to a contract from the four corners of the document. *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, 160 P.3d 936. Pursuant to the Restatement (Second) of Contracts 317 (1981), an assignment of a right is "a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor *is extinguished* in whole or in part and the assignee acquires a right to such performance." (Emphasis added).

the assignor of the claim. *Wood & Co. v. Sutton,* 1936 OK 667, ¶ 8, 9, 61 P.2d 700, 701; *see also Okla. Oxygen Co. v. Citizens State Bank & Trust Co. of Kilgore, Tex.,* 1954 OK 228, ¶ 5, 274 P.2d 372, 373 (quoting *Market Nat. Bank v. Raspberry,* 1912 OK 467, 124 P. 758) (valid assignment of claim unquestionably passes the title of the assignor to the assignee).

¶ 48 By virtue of the assignment alone, then, Receiver became entitled to prosecute and enforce the actions, including the right to control the litigation, decide on litigation strategy, and weigh the merits of settlement as against the costs of litigation. In this regard, *Chicago R.I. & P. Ry. Co. v. Bankers' Nat. Bank,* 1912 OK 166, 122 P. 499, is instructive. There, the Oklahoma Supreme Court addressed the situation where a debtor's claim for damages was prosecuted by an assignee who was owed less than the face amount of the claim. The Court held that the assignee *alone* was entitled to prosecute the action as the real party in interest, without joining its assignor as a party. Adopting the language and reasoning of the Kansas Supreme Court in a similar case, the Oklahoma Court stated: " 'The assignment was absolute, and is such as to vest in the assignee the whole legal title. He [the assignee] had such a beneficial interest in the proceeds of the judgment that he could bring an action in his own name, without joining other parties, who by collateral agreement might be entitled to a share of the proceeds.' " *Id.* at ¶ 4, 122 P. at 501 (quoting *Walburn v. Chenault,* 43 Kan. 352, 23 P. 657 (1890)).

¶ 49 Among the few issues on which the parties to this case do agree is that, pursuant to 12 O.S.2011 2017, an action must be prosecuted by the real party in interest. Here, the assignment from Plaintiffs was absolute, and by virtue of it Receiver obtained title to the claim along with the consequent right to control the litigation according to its own discretion and judgment, without regard to input from Plaintiffs as to whether settlement of the claim is or is not advisable.

Thus, although we disagree with the trial court's reasoning that required it to make factual findings concerning the value of the claims, we nonetheless find that the court entered the correct judgment on Receiver's motion.[17]

### CONCLUSION

¶ 50 We affirm the trial court's judgment dismissing Redcorn and Eduvest from the case and substituting Receiver as the sole real party in interest entitled to control the litigation in both cases. We further affirm the trial court's decision to disregard—by deeming certain filings "moot"—the motions or other papers filed by Redcorn and/or Eduvest addressing matters that are properly the concern only of the real party in interest to the litigation. We decline to address error alleged by Plaintiffs going to denial of their motions for leave to amend their trial court petitions, or as to whether Knox's counsel should be recused, as those matters are not properly before us, and further concern issues to be pursued in the discretion of Receiver as real party in interest.

¶ 51 **AFFIRMED.**

FISCHER, P.J., and RAPP, J., concur.

---

P.3d 888, 891. We further note that our reasoning is consistent with our discussion in Part II concerning the procedure and analysis applicable to 12 O.S.2011 2025(C).